DINSMORE vs. THE RACINE & MISSISSIPPI RAILROAD
COMPANY, and others.

A railroad company, engaged in constructing a railroad, to secure the payment of money borrowed for that purpose, gave a mortgage, by which they granted to the party of whom the loan was obtained, all their railroad, with its superstructure, track, and all other appurtenances, made or to be made, and all the right and title of the said company to the land on which said railroad was and should be constructed, together with all rights of way then acquired, or thereafter to be acquired by the said company, and including the depots,

June Term,
1860.

DINSMORE
v.
RAC. & MIL. R.
R. Co.

engine houses, shops, and other constructions at the termini and along the line of said railroad, and the parcels of ground on which the same were or should be erected, and all the land which should be used for depot and station purposes, with the appurtenances, and all the embankments, bridges, viaducts, culverts, fences and structures thereon, and all other appurtenances belonging thereto, and all the franchises, privileges and rights of the said company in, to, and concerning the same. *Held*, that said mortgage did not create any lien, as against a subsequent mortgage creditor, upon a tract of 285 acres of wood-land, *afterwards* acquired by the company, situate seven miles from said railroad, although said land was purchased and used by said company for the purpose of supplying said road with timber and fuel.

APPEAL from the Circuit Court for *Racine* County.

This action was brought by *Dinsmore*, as trustee for the Walworth County Bank, against the Racine and Mississippi Railroad Company and others, to foreclose a mortgage upon two hundred and eighty-five 60-100th acres of land in Racine county, alleged to have been executed by said company to one Allen, on the 2d day of December, 1857, to secure the payment of a note of said company for $7000, and which note and mortgage were afterward assigned by said Allen to the plaintiff, for the use of said bank. Among the defendants to the action, was the Farmers' Loan and Trust Company, which filed an answer, stating that the real estate described in said mortgage was purchased and used by the said railroad company for the purpose of getting wood and timber therefrom, to be used on said railroad; that said mortgage was not given for the purchase money, but to secure a precedent debt due to the plaintiff; that said defendant held two mortgages executed to it by said railroad company, one dated the 1st of September, 1855, and the other on the 2d of June, 1856, and duly recorded about the time of their respective dates (copies of which were annexed to said answer); that more than $100,000 was due for interest in arrear upon the bonds secured by each of said mortgages; that on the 10th of May, 1859, said railroad company, by deed of surrender, delivered to said defendant possession of the property covered by said two mortgages, so far as it could be done by such deed, and by the officers of said company, and that said defendant immediately took possession of the same, so far as possession could be obtained by it, and since that time, as mortgagee in possession under said deed,

and in pursuance of covenants therein, had paid out for
taxes, right of way, and other purposes authorized by said
deed, $250,000 over and above the net profits received from
said road; that said defendant had caused said mortgage,
dated September 1st, 1855, to be foreclosed by a decree of
the district court of the United States for the district of Wis-
consin, rendered on the 17th of May, 1859; and said defend-
ant insisted that the mortgage executed to it on the 1st of
September, 1855, was a prior lien to that of the plaintiff, upon
the land described in the complaint, and a claim on said
land prior and superior to that of the plaintiff, for all money
expended by it since it took possession of said property, as
it had a right, and was in duty bound, to make said expend-
itures as mortgagee in possession, and by virtue of an express
stipulation in said deed of surrender., The answer also de-
nied the execution by the railroad company, of the mortgage
under which the plaintiff claimed.

The language of the mortgage of September 1st, 1855, so
far as it is descriptive of the property mortgaged, is recited
in the opinion of the court, and need not be repeated here.
The mortgage of June 2d, 1856, was upon the western divis-
ion of the road, extending from Beloit to the town of Savan-
na, in Carrol county, Illinois, and uses in reference to that
division, the same language, in its description and enumera-
tion of the property mortgaged. The description of the
property in the deed of surrender, was substantially the
same, having application, however, to both divisions of the
road.

On the trial, the plaintiff admitted all the matters stated in
the answer of the Farmers' L. & T. Co., except the allegations
that their mortgages were, or ever had been, a lien upon the
land described in the complaint, and that said railroad com-
pany never executed the mortgage which the plaintiff was
seeking to foreclose. It was also admitted by the parties,
that the lands described in the mortgage under which the
plaintiff claimed, were acquired by said railroad company after
January 1st, 1856; that said lands were situate seven miles
from the track of the railroad of said company; that the
mortgage described in the complaint was given for money

used in constructing said road; that no actual possession of said land had been taken by said Farmers' L. & T. Co., under said deed of surrender; and that the decree of foreclosure mentioned in the answer of said company, was entered by stipulation with said railroad company, and was in pursuance of, and in accordance with, said deed of surrender. Proof was introduced as to the execution by the railroad company, of the mortgage under which the plaintiff claimed.

The circuit court found that the mortgage mentioned in the complaint was executed by said railroad company, and was a valid and subsisting lien upon the lands described therein, and that said lands were not included in, or covered by, either of the mortgages executed by said railroad company to the Farmers' Loan and Trust Company; to which finding the defendants excepted. Judgment in accordance with said finding, from which the defendants appealed.

*Strong & Fuller*, for appellants, argued that the railroad company mortgaged its property as an *entirety*, to the Farmers' L. & T. Co., and that the land purchased afterwards by the railroad company, for the purpose of supplying the road with timber and fuel, and used for that purpose, passed as an appurtenant—an accession and incident essential to the use and enjoyment of the principal thing granted. In support of this view the counsel cited and commented upon the following cases: *The Columbus, Piqua & Ind. R. R. Co. vs. Coe*, in Supreme Court of Ohio; *Phillips vs. Winslow*, 18 B. Monroe, 431; *Pierce vs. Emery*, 32 N. H., 484; *Seymour vs. C. & N. Falls R. R. Co.*, 25 Barb., 284; *Willink vs. Morris Canal Co.*, 3 Green, 377; *Grinnell vs. Trustees of S. M. & N. R. R. Co.*, Ohio Court Com. Pleas, cited by Redfield, 587; *First Mortgage Bondholders vs. Maysville & Lexington R. R.*, cited by Redfield, 590; *Williamson vs. N. A. & S. R. R. Co.*, cited by Redfield, 590; *Pennock & Hart vs. Coe* and *Coe vs. C. Z. & C. R. R. Co.*, and *Cooper & Clark vs. Ohio Central R. R. Co.*, all decided by Judge McLean; *Farmers' Loan & Trust Co. vs. Hendrickson*, 25 Barb., 484; *Hall vs. Sullivan R. R. Co.*, cited by Redfield, 578; *Shaw vs. N. Co. R. R. Co.*, 5 Gray, 162; *Platt vs. New York & Boston R. R. Co.*, 26 Conn., 544; *B., C. & M. R. R. Co. vs. Gilmore,*

37 N. H., 410; *S. & M. R. R. Co. vs. Morgan Co.*, 14 Ill., 163.

June Term, 1860.

DINSMORE
v.
RAC. & MIL. R. R. Co.

November 19.

*Cary & Pratt*, for respondents. [No argument on file.]

*By the Court*, COLE, J. In the case of *The Farmers' Loan & Trust Company vs. The Commercial Bank* (unreported), we had occasion to consider, to some extent, the conditions of the mortgages made by the *Racine & Mississippi R. R. Co.* to the Farmers' Loan & Trust Company, and to determine whether certain property in controversy between the bank and the loan and trust company, were embraced within the terms of those mortgages. The property in that case consisted of certain railroad chairs, or irons used in fastening down the rails, which were acquired by the railroad company subsequent to the execution of the mortgages to the loan and trust company, and which had never been attached to or become affixed upon the road-bed. We did not think there was any language in the mortgages, which, by any fair construction, could be said to include the chairs thus acquired and thus situated, and we therefore held that the loan company could not recover possession of them by virtue of the mortgages. A motion for a rehearing has been made in that case, and three very able and elaborate arguments have been filed by the counsel for the loan company, in which the correctness of the reasoning and the soundness of the decision in that case are called in question. But I must say that, after a careful reading of those arguments, and an examination of the authorities cited, I still think that the railroad chairs were not covered by the terms of the mortgages. The reasons for this conclusion are quite fully given in the opinion filed, and I deem it unnecessary to repeat or enlarge upon them here.

But if it would be unreasonable so to construe the terms of the mortgages as to make them include the property claimed in that case, it appears to me it would be doing greater violence to the language of those instruments to say that the parties intended they should embrace the lands in controversy in this case. It is admitted that the lands described in the mortgage mentioned in the respondent's complaint, were

acquired by the railroad company after the execution of the mortgage given by the railroad to the loan company upon the first division of the road; that these lands consist of nearly three hundred acres of woodland situated about seven miles from the road track; and that these lands were purchased and used by the railroad company for the purpose of getting wood and timber off the same to be used on their road. The clause in the mortgage given by the railroad company to the Farmers' Loan & Trust Company, which must include these woodlands—if they are embraced in it— is the following: The railroad company granted and sold, &c., to the Farmer's Loan & Trust Co., "all their railroad, with its superstructure, track and all other appurtenances, made or to be made in the state of Wisconsin, from its eastern termination in the city of Racine, to its western termination in the town of Beloit, and all the right and title of the said parties of the first part, to the land on which said railroad is and may be constructed, together with all rights of way now acquired and obtained, or hereafter to be acquired or obtained by the said parties of the first part, and including the depots, engine houses, shops and other constructions at the city of Racine aforesaid, and at said town of Beloit, and all other places along the line of said railroad, and the lots, pieces or parcels of land on which the same are or may be erected, and all the pieces of land which shall be used for depot and station purposes, with the appurtenances, and all the embankments, bridges, viaducts, culverts, fences, and structuary thereon, and all other appurtenances belonging thereto, and all the franchises, privileges and rights of the said parties of the first part, of, in, and to or concerning the same, * * * to have and to hold the said premises and every part thereof, with the appurtenances, unto the said parties of the second part," for the objects and trusts therein declared.

This mortgage recites that the railroad company were engaged in constructing a railroad from the city of Racine to the town of Beloit, and, to accomplish the work, needed, and were desirous of raising the sum of $680,000, to secure the payment of which, with interest, the mortgage was given.

Now, the most that can fairly be claimed from the language describing the mortgaged premises and real estate is, that it was intended to embrace the railroad with its superstructure, track, and all appurtenances made or to be made, from its eastern termination to Beloit, with all the right and title of the railroad company to the land upon which the road had been or should be constructed, together with all rights of way acquired or to be acquired, including the depots, shops, engine houses, and other constructions at the termini and along the line of the road, and the lots upon which the same were erected, and all pieces of land which should be used for depot and station purposes. Assuming, for the time being, that this was a valid mortgage upon the subsequently acquired lands and real estate of the company which were necessary and proper for the right of way, depot grounds, engine houses and station purposes, still can it be claimed that the mortgage also included lands situated several miles from the line of the road, which did not belong to the company at the time the mortgage was made, and which, though convenient, are not necessary or essential to the operation of the road? It is said that these lands were purchased by the company for the wood and timber upon them, which were to be used upon the road. Upon the score of economy it might be desirable that a railroad corporation should own the woodland and coal beds from which it could obtain all necessary fuel. So perhaps it might be convenient for it to own pine lands from which it could obtain lumber for fences and bridges, and mills to manufacture the lumber; or a line of steamboats for the transportation of freight and passengers by water to and from the road. Still these things are not at all necessary for the full enjoyment and use of the road and franchises. A railroad corporation can purchase its fuel as well as a natural person. It could not have been contemplated by either party, that the company would buy timber lands several miles distant from the line of the road, for the purpose of profit or convenience, when those lands were not necessary for the use and enjoyment of the road. The lands and real estate spoken of in the mortgage were those upon which the road was to be constructed, or in which the

June Term,<br>
1860.<br>

DINSMORE<br>
v.<br>
RAC. &amp; MIL. R.<br>
R. Co.

June Term,
1860.

Dinsmore
v.
Rac. & Mil. R.
R. Co.

company might acquire the right of way, or lots or parcels of land along the line of the road used or to be used for erecting thereon depots, engine houses, shops, and all such structures as might be necessary for the operation and business of the road, or upon which drains and embankments might be made for the protection and preservation of the same. It is the real estate along the line of the road, in immediate connection with it, and necessary for the operation of it, to which the mortgage in its terms relates. If, therefore, we were to assume that the parties intended that the mortgage should embrace all subsequently acquired real estate wherever situated, that remote from, as well as that which was in connection with the road, and necessary for its use and operation, we do not think the mortgage contains apt and proper language to carry such intention into effect. We therefore cannot see how the mortgage of the Farmers' Loan and Trust Company can hold these timber lands, as against the mortgage subsequently given, creating a specific lien upon them, unless it be by virtue of the doctrine of entirety, as it is defined and spoken of in the arguments of the counsel for that company. His position upon that point, if I understand it, is this : A railroad with its franchises is one entire thing, a unity, so that when a mortgage is given upon it *eo nomine*, the mortgage embraces and holds all the property of the company, of every name and nature, real and personal, whether fixtures or not, whether owned at the time of the mortgage or subsequently acquired, in whatever condition it may be, provided it was obtained for the necessary use of the road. Thus the railroad, with its franchises and property, being an indivisible thing, when a mortgage is once given upon it, the mortgage attaches to, and fastens upon, all property, of every kind, as soon as acquired by the corporation, and takes priority of every lien attempted to be created thereafter upon any specific part of the entirety. If this proposition is sound to the extent claimed, the mortgage of The Farmers' Loan & Trust Company, being first in time, would hold the subsequently acquired timber lands, although there was no language in it which could be said to fairly relate to them. For all subsequently acquired property, real

and personal, would pass as an incident or accessory to the principal thing mortgaged.    I cannot adopt this view of a railroad, or think that such is the peculiar nature and character of the property belonging to these corporations.    A railroad corporation, with its franchises and property, has undoubtedly many things peculiar to itself.    But theoretically, I have great difficulty in considering it, with all those franchises and real and personal property, as being one entire and indivisible thing.    My first conception of it is contrary to this idea.    A railroad, with all its property and franchises, cannot, with much precision of language, be likened to a machine, or even a vessel.    It is an attempt to compare things which have few, if any, points of resemblance.    A railroad is defined by Webster to be "a road or way on which iron rails are laid for wheels to run on, for the conveyance of heavy loads in vehicles."    This, I think, is the popular understanding of the term.    There is no difficulty in conceiving of a railroad as separate and distinct from its rolling stock, cars, engines and depots.    The idea of a railroad is complete without these accessories.    We speak of the real estate belonging to a railroad, and of personal property belonging to it, without meaning that all these are inseparable from it.    They do not form one entire thing which is incomplete without all these accessions.    I can understand how a railroad corporation, *with its franchises*, may be said to be an entire, indivisible thing, a unity.    But I cannot well conceive how a railroad, with all its property, real and personal, of every nature and character, can with accuracy be said to be an indivisible thing, nor do I think the law so regards it.    If this doctrine be sound, consider one of the consequences, in this case.    Does it not work a revolution in our registry laws?    At the time the mortgage was given to the Farmers' Loan & Trust · Company, upon the eastern division of the road, there was no statute authorizing a railroad company to mortgage its franchises, in force in this state.    Neither was there any law giving to a mortgage made by a railroad company greater effect than was given to a mortgage by a natural person.    If the mortgage of the Farmers' Loan & Trust Company became a prior lien upon the timber lands men-

tioned in this case, by virtue of the doctrine of entirety, there could be no safety in depending upon the record. For a person going to buy these lands of the railroad company, would find nothing upon the record to apprise him that they had been mortgaged to that company. If he looked into that mortgage, he would find nothing in the description of the mortgaged premises which related to them. Finding the title of record in the railroad company unincumbered so far as he could see, he might buy or take a mortgage upon the lands, trusting to the registry law. Thinking that the same legal consequences attached to a mortgage given by a railroad company as would attach to one given by a natural person, he would find that the record was but a snare. But still, if this is the settled law of the land in reference to railroads and railroad property, such a person could only complain of his ignorance and folly.

This mortgage given the Farmers' Loan & Trust Company, was made by virtue of the general power of the railroad company to dispose of its property, and not under any law of the state authorizing such corporations to mortgage their rights and franchises. If the mortgage had been made by an individual, within the decisions of this court, it would not have bound his subsequently acquired property. If the mortgage in this case embraced in its terms these timber lands, we might have to consider whether it did not fall within the principle of our decisions upon that subject; but it does not. The mortgage of the Farmers' Loan & Trust Company can only hold these lands by virtue of this doctrine of entirety. We have endeavored to show that in reason, and from the nature of railroad property, there is no ground for saying that a railroad, with all its rights, franchises and property, real and personal, is an indivisible, entire thing. Practically, we believe, they are not so regarded. Mortgages are given upon the personal property of railroads, or upon some portion of it, or upon some portion of the real estate, or a portion of the road. The property has been treated as though it might be separated, and appropriated to the payment of debts, without destroying the integrity of the company. We have been referred to several cases, however, in which, it is

insisted, this doctrine of the entirety of a railroad and its June Term, property is recognized; and it is claimed that the principles of 1860. those decisions show that the mortgage of the Farmers' Loan DINSMORE & Trust Company attached to, and became a lien upon, those RAC. & MISS. R timber lands, before the mortgage executed by the railroad R. Co. company to Allen. These cases are *The Farmers' Loan & Trust Co. vs. Hendrickson*, 25 Barb. S. C. R., 484; *Phillips &c. vs. Winslow*, 18 B. Mon. R., 431; *Willink vs. The Morris Canal & Banking Co.*, 3 Green (N. J.), 377; *Pierce vs. Emery*, 32 N. H., 484; *The Columbus, Piqua & Indiana R. R. Co. vs. Coe*, (unreported case, decided by the supreme court of Ohio, April, 1860); *Seymour et al. vs. The Canandaigua & Niagara Falls R. R. Co.*, 25 Barb. S. C. R., 284.

In the *Farmers' Loan and Trust Company vs. Hendrickson*, the question submitted for the judgment of the court was whether the judgment creditors of the Flushing Railroad Company, by virtue of the judgments and executions, and the levies made by the sheriff, acquired a lien upon the property levied on as the property of the company, superior in law to the claim of the plaintiffs under and by virtue of prior mortgages executed by the railroad company. The property levied on was a part of the rolling stock, consisting of engines, tenders, and passenger, freight and hand cars. The Farmers' Loan and Trust Company claimed the property by virtue of two mortgages executed by the company upon the land forming the road way, and all lands occupied for depot buildings, engine houses, &c., together with the superstructure and buildings thereon, and all rails and other materials used or to be used upon the road, &c., engines, tenders, cars, tools, &c., with the tolls, rent, and income, and all franchises, rights and privileges of the company. The property had been purchased and placed upon the road intermediate to the time of giving the two mortgages, and was in actual use when the levy was made. The mortgages had never been filed in the offices where chattel mortgages were required to be filed, and the question was, whether the property levied on was chattels or fixtures. The court held that by the general principles of law applicable to fixtures, the engines, tenders, cars &c., were to be deemed fixtures, and would pass

under the mortgage of the track and lands occupied by the company, instead of being subject to the lien of judgments recovered subsequent to the mortgage.

In *Phillips vs. Winslow*, the judgment creditors of the railroad levied upon two freight cars on the track, eight car wheels at the car shop, twenty-five cords of fire wood obtained for the use of the engines, and five hundred bushels of stone coal at the machine shop. The company had previously executed a mortgage purporting to convey all of its present and in future to be acquired property, the road made and to be made, including the right of way and land occupied thereby, the superstructure and tracks thereon, and all rails and other materials used thereon or procured therefor, with the engines, tenders, cars, tools, materials and all other personal property, with the tolls, rents, and incomes, and all the rights and franchises of the road. The court held that this mortgage included the cars, wheels, and fire-wood obtained for the use of the engines, and the coal for the use of the machine shop, as things incident to, and indispensable to the use of, the thing conveyed. The court say: "The company by its charter was authorized to borrow money, and execute such evidences of indebtedness as might be deemed proper, and pledge the property, franchises, rights and credits of the corporation, for any loan, liability or contract which it had made or should make. We do not deem it necessary to decide in this case, whether, under ordinary circumstances, a mortgage on subsequently acquired property would be valid or pass any title to the property. These deeds were made under the power conferred by the charter, and their validity and effect have to be determined by the provisions of the charter, and not by the general law on the subject."

In *Willink vs. the Morris Canal and Banking Company*, the canal company had been authorized to construct a canal to connect the waters of the Delaware with the waters of the Passaic. By a subsequent act, the company were authorized to continue the Morris Canal to the waters of the Hudson at or near Jersey City. The company was authorized to borrow money, and for securing the due payment thereof, to hypothecate by way of trust, mortgage, or otherwise, the Morris

June Term,
1860.

DINSMORE
v.
RAC. & MISS. R.
R. Co.

Canal, with all its privileges, appendages, and appurtenances, and all the chartered rights of the company. The company, having made a loan, executed a mortgage by authority of the act, " upon all and singular the Morris Canal so called, being the canal authorized by the laws of the State of New Jersey, as the said canal has been laid out through the several counties of Warren, Sussex, Morris, Essex and Bergen in the State of New Jersey, and being now in a course of completion from the Delaware to the Hudson river, together" &c. At the time of the execution of the mortgage, the canal had not been constructed from the Passaic to the Hudson, nor had the land been purchased upon which the canal was subsequently constructed. The route had been surveyed, though a part was subsequently varied. The court held that the mortgage covered the entire canal from the Delaware to the Hudson, and also the pier at Jersey City, which was constructed upon land purchased after the execution of the mortgage.

The chancellor said, "The act clearly contemplated a mortgage on the entire canal with its appendages and chartered rights. We must then see what was actually covered by the terms of the mortgage." And he holds, from the description of the mortgaged premises, that it was the clear intention of the parties to mortgage the entire canal from the Delaware to the Hudson, and that the language can mean nothing else.

In *Pierce vs. Emery*, an act of the legislature gave a railroad corporation authority to issue bonds for a loan of money, and, for security, to make a mortgage to trustees of all the property, and all the rights, franchises, powers and privileges of the corporation, and in the mortgage to give the trustees power, on breach of the condition, to sell the real and personal estate, and all the rights, franchises, powers and privileges named in the mortgage, by a deed which should convey to the purchasers all the rights, franchises, powers and privileges which the corporation possessed, and the use of the railroad, with all its property and rights of property, for the same purposes and to the same extent that the corporation could use the same if the deeds had not been made, sub-

ject to the same liability as to the use of the road, that the corporation would have been under, if the deed had not been made; and the corporation having issued bonds, and made such a mortgage, it was decided that the trustees would hold under it property afterwards acquired by the road, against other creditors who claimed the same property by virtue of a later mortgage. The court held that such a mortgage was in substance and effect, a conveyance under the act, of the road and corporation, as an entire thing, and that subsequently acquired property became a part of the original subject of the mortgage by accession; that if the company mortgaged its franchises and corporate rights, it conveyed away the right to take and hold property, and that subsequently acquired property, immediately upon its vesting in the corporation, would as an incident and by accession, become a part of the thing originally mortgaged, and of the mortgage security. In the last three cases, mortgages were executed by the corporations under special authority given by the legislature, and the courts gave to the mortgage in each case such effect as they thought the legislature intended it should have. But I do not understand any of them to decide, upon general principles of law applicable to railroad mortgages, that they hold subsequently acquired property, on the ground that a railroad, with its franchises and property, is an indivisible, entire thing. On the contrary, in the case of *The Boston, Concord & Montreal R. R. Co. vs. Gilmore*, 37 N. H. R., 410, the court held distinctly that locomotive engines, and freight and passenger cars of a railroad company, were liable to attachment, when not in actual use, like other property.

In the case of *Sangamon & Morgan R. R. Co. vs. County of Morgan*, 14 Ill. R., 163, the idea that a railroad, with its property, real and personal, is an entirety, was pressed upon the consideration of the court, but the doctrine was not sanctioned. The court say, "The road and furniture do not constitute one entire estate, either real or personal. The furniture is personal property, and constitutes no part of the road, which is real property. It is no more a part of the road than is the furniture of a house a part of the house."

The same view in respect to the property of a railroad cor-

poration is advanced in the case of the *Columbus, Piqua & Indiana R. R. Co. vs. Coe.* The court there say: "The corporation having acquired an interest in the land for the construction of its road, in that construction affixes to the land certain things—the timber and iron for the track, the stone and timber for the bridges and culverts. It also erects depots and structures for a supply of water. The road is not regarded as constructed and prepared for use until such things are affixed. But when the road is thus constructed and ready for use, other things are requisite for that use—locomotives, cars, and other articles and materials, some of which are consumed in the use, and the supply has to be from time to time renewed. Now we think there is a manifest distinction between the road as constructed for use, and the various things employed in that use; and that the latter cannot, with propriety, be regarded as constituting a part of the real estate, but as the personal property of the corporation." This view would not be correct under our statutes, which expressly make the rolling stock of railroads fixtures. Section 34, chap. 79, R. S., 1858.

It is true there are expressions in these cases to the effect that, as between the company and the first mortgagee, when the equities of other creditors do not interfere with this rule, the property will be considered as an entirety. Still I do not understand that in any of them it is adjudged upon general principles of law applicable to this kind of property, that a railroad, with all its real and personal property of every nature, obtained for the use of the road, will be regarded and treated as one indivisible, entire thing. And we know of nothing in the character or use of this property, which requires the application to it of any such rule of law. And conceding that the mortgage of the Farmers' Loan & Trust Co. embraced, and was a valid lien upon, all property therein described, whether the same was then owned by the company or was subsequently acquired for the purposes of the railroad, still we do not think it should be construed so as to include the timber lands in controversy in this suit. They were outside of the legal limits of the railroad, distinct from it, and not necessary for its proper use and operation. *Sey-*

*mour et al. vs. The Canandaigua & Niagara Falls R. R. Co., supra.*

It follows from these views that the judgment of the circuit court must be affirmed.