CALENDER (CULVER v.). See Case No. 2,307.

## Case No. 2,309.

### CALHOUN v. MEMPHIS & P. R. CO.

[2 Flip. 442; 9 Cent. Law J. 66; 8 Reporter, 395.][1]

Circuit Court, W. D. Tennessee. April 7, 1879.

RAILROADS—ACCRETIONS—MORTGAGES—WHAT ARE INCLUDED — THE RULE AS TO AFTER-ACQUIRED LANDS.

1. Where a railroad company makes a general mortgage of the railroad this does not pass

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 8 Reporter, 395, contains only a partial report.]

after-acquired lands, unless they are used in connection with the actual operations of the road as a part thereof.

[Cited in Moran v. Pittsburgh, C. & St. L. Ry. Co., 32 Fed. 887; New Orleans Pac. Ry. Co. v. Parker, 143 U. S. 42, 12 Sup. Ct. 368.]

[See note at end of case.]

2. The doctrine of accretions does not extend to such lands.

3. If the intention is to include in the mortgage lands which the company expects to acquire, they should be described with reasonable certainty. They would not pass under a mortgage, where the property is described as "the railroad then constructed and to be constructed, etc., and all other corporate property, real and personal of said railroad company, belonging or appertaining to the said railroad, whether then owned or thereafter to be acquired."

[Cited in Moran v. Pittsburgh, C. & St. L. Ry. Co., 32 Fed. 887; New Orleans Pac. Ry. Co. v. Parker, 143 U. S. 42, 12 Sup. Ct. 368.]

The Paducah & Memphis Railroad Co. executed a mortgage, now foreclosed. The foreclosure was had in this cause [in which P. C. Calhoun was complainant], and grew out of a mortgage "on all the railroad of said company, as well that part then constructed and completed as the part thereof which should thereafter be constructed and completed; and all and singular the right of way of said company, and the lands, real estate, rails, tracks, bridges, buildings, depots, station houses, shops, warehouses, structures, erections, fixtures and appurtenances thereto belonging or in any wise appertaining, whether then owned and possessed, or thereafter to be acquired by it; and also all the locomotives, engines, tenders, cars, carriages, shop-tools and machinery, and all the franchises, rights and privileges, and all other corporate property, real and personal, of said railroad company, belonging or appertaining to said railroad, whether theretofore acquired and then held and owned, or thereafter to be acquired by said railroad company, including all depots, warehouses and structures, and all lands acquired or designed for depots, warehouses or structures, at either terminus or along the line of said railroad, whether then held and owned or thereafter to be acquired by said railroad company; and all continuations, branches, tracks or extensions of said railroad to such depots, warehouses and structures; and also all the right, title and interest which said Paducah & Memphis Railroad Company then had or might hereafter acquire under and by virtue of any lease to it in and to any other railroad branching from or connecting with the said railroad of the said railroad company hereinbefore described, or in and to any other property, real or personal, used or to be used by the said railroad company in connection with its said railroad, or with any railroad leased by it as aforesaid; and all and singular the tolls, incomes, earnings and profits of the said railroad, of said railroad company, and of any railroad leased by it

as aforesaid; and also all the estate, rights, title, interest, property, possession, claim and demand whatsoever, as well in law and equity, of the said railroad company, of, in and to the same, and every part and parcel thereof, with the appurtenances, to have and to hold," etc. The railroad at a subsequent time acquired a tract of forty-four acres of land from one Kerr, and took his deed therefor, which land lay along and adjacent to the roadway. The consideration for this conveyance, as appears from the face of the deed, (together with two or more acres, before granted as right of way) was the location of a station at a place called Kerrville by said company. This land, the proof shows, was surveyed and laid off into town lots, and as such was offered for sale. Fisher and others (who came into court by petition) having obtained judgments against the railroad company levied executions on these town lots, and claim that as they are not included in the mortgage they should be sold and the proceeds be applied to the payment of their judgments.

Metcalf & Walker, for petitioners.

Gantt & Patterson, for defendants.

HAMMOND, District Judge. It is insisted by the petitioners that the land in dispute is not within the description of the property conveyed, or if it can be so held, then, that the mortgage is inoperative because this land is not more particularly described, and was not then owned or in expectancy. However carefully we analyze the words and sentences used in describing the property conveyed, much may be said on either side, and there is no very clear indication either way, as to the actual intention of the parties in relation to land situated as this is and acquired as this was. It is not unusual for railroad companies to own lands not at all connected with the narrow strip occupied by the roadway and its appurtenances, and not unusual to include such lands in the mortgages. Neither can it be denied, that under a properly constructed instrument, lands of that character to be subsequently acquired may be included with the other property conveyed. But all mortgages of the kind, which have fallen under my observation, make some provision for utilizing the outside lands by their sale and the application of the proceeds to the purposes of the trust, generally to the construction or betterment of the road itself. The entire absence of any such provision in this mortgage, more than any other circumstance, inclines me to the belief that as a matter of fact, lands such as these were not in the contemplation of the parties. Besides, as to other property already included, there is no ambiguity whatever, and it is only when we are called upon to say whether this land was conveyed by the instrument, that it becomes perplexing in its uncertainty of description; yet, the expression "all other, the corporate property, real and personal, of

said railroad company, whether heretofore acquired and now held, or owned, or hereafter to be acquired by the said railroad company," and, perhaps, other phrases in the description are broad enough in terms to cover this land. It is doubtful if the words "belonging or appertaining to the said railroad," as used in connection with this phrase, were intended to limit the general description to lands to be used in the railway, and appurtenant, as for depots, warehouses, structures, etc., because these had been already abundantly described with the description of the railway itself. The word "railroad," as used here, may mean railroad company, as it frequently does. Ordinarily, this general description would be controlled by the subsequent enumeration contained in the words "all depots, warehouses and structures." Pullan v. Cincinnati & C. R. Co. [Case No. 11,461]; 3 Washb. Real Prop. 400, 431. But when this rule of construction is relied on, it will be generally found that the particulars are introduced with a videlicet, or some such manifestation of the intention to restrain the general description. Bouv. Dict. words "videlicet," "scilicet;" and this ejusdem generis rule of construction always yields to the intention to be gathered from the context and general scope of the whole instrument. Williams v. Williams, 10 Yerg. 26; Edmondson v. Edmondson. 1 Tenn. Ch. 563. Here the particulars are introduced by the word "including," which does not indicate a restrictive intention, but rather the contrary.

These particulars having been already more particularly described, may have been inserted out of abundant caution, and not for the purpose of confining the mortgage to the railway and its superstructure. The same uncertainty prevails if we consider the other terms of this description, supposed to include this land. But, notwithstanding this, the general description is broader than in Dinsmore v. Racine & M. R. Co., 12 Wis. 649, or that in Seymour v. Canandaigua & N. F. R. Co., 25 Barb. 284, and the case falls within the principle of these cases, and the case of Shamokin Valley R. Co. v. Livermore, 47 Pa. St. 465, all excluding lands situated like this, under mortgages very similar to the one under consideration. Walsh v. Barton, 24 Ohio St. 28; Parish v. Wheeler, 22 N. Y. 494.

A mortgage by a railroad company does not, by implication, cover property not essential to its business. 1 Jones, Mortg. 156. In this case, while all other property is described with marvelous detail, this, if intended to be conveyed, is only described by doubtful general terms. It does not seem, from other provisions and from the whole instrument, to have been within the scope of the contract the parties were making. This point would be sufficient to decide the case, but inasmuch as it may be doubted, I have considered it on the assumption that the intention of the parties was to convey all lands not immediately connected with the railway, and appurtenant to it, then owned and subsequently to be acquired.

Railroad mortgages have, on grounds of public policy, by a sort of eminent domain, somewhat trespassed upon some of the best assured doctrines of the common law; but the courts have not unconditionally surrendered to them all the principles which govern in determining the rights of property as between ordinary individuals. On the doctrine of accretion, it has been held that, without particular mention of the property afterwards acquired, a mortgage by a railroad company will pass, under a general description, property subsequently acquired which is essential to its use, and may be fairly taken as a part and parcel of the thing which we call a railroad. 1 Jones, Mortg. §§ 152, 161. But as to its other property, not regarded as accretions to the road itself, these mortgages are governed by the same rules as in other cases. The broad doctrine stated in Mitchell v. Winslow [Case No. 9,673] has come to be taken as quite an accurate statement of the principle, that after-acquired property may be the subject of a sale or mortgage; but, in its application, the courts have established that the general principle not only has exceptions, but in all cases must conform to the rules governing all contracts. It is said that, in relation to the sale of things not yet in existence, or not yet belonging to the vendor, the law considers them as divided into two classes, one of which may be sold, while the other can only be the subject of an agreement to sell—of an executory contract. Things not yet existing, which may be sold, are those which are said to have a potential existence —that is, things which are the natural product or expected increase of something already belonging to the owner. But he can only make a valid agreement to sell—not an actual sale—where the subject of the contract is something to be afterwards acquired. Wyatt v. Watkins, 1 Tenn. Leg. Rep. 148, 150; Benj. Sales. § 78; 2 Story, Eq. Jur. 1040, 1231; 1 Jones. Mortg. § 149; Everman v. Robb, 52 Miss. 654; Phelps v. Murray, 2 Tenn. Ch. 746; Looker v. Peckwell, 38 N. J. Law, 253; Morrill v. Noyes, 56 Me. 458; Philadelphia, W. & B. R. Co. v. Woelpper, 64 Pa. St. 366; Ellett v. Butt [Case No. 4,384]; Beall v. White, 94 U. S. 382.

In the application of this principle to railroad mortgages, it will be found that the courts sometimes refer them to one of these classes, and sometimes to the other, as the property is regarded as personal or real property. 1 Jones, Mortg. § 154, and cases cited; Pennock v. Coe, 23 How. [64 U. S.] 117; Whitewater Valley Co. v. Vallette, 21 How. [62 U. S.] 414, 422; Dunham v. Cincinnati, P & C. R. Co., 1 Wall. [68 U. S.] 254, 267, 268; Shaw v. Bill, 95 U. S. 10; Pullan v. Cincinnati & C. R. Co. [Cases Nos. 11,461 and 11,462]; Phelps v. Murray, 2 Tenn. Ch. 753.

It is said in this last case that a contract relating to realty was always enforceable in equity, and therefore a conveyance of realty, not the present property of the vendor, is good in equity. And all these cases show that there never was any difficulty in treating a contract to convey real estate to be subsequently acquired, as a mortgage of it, in all cases where the object was to secure a debt. We have already seen that after-acquired lands, not used in connection with the railroad, cannot pass under a general mortgage of the road itself, as a part of it, on the principle of accessions to it; and hence it follows that, as to this kind of property, the contract must be treated as an agreement to mortgage; and under the rule that a court of equity will treat that as done which is agreed to be done, it constitutes a lien upon the land specifically mentioned. It was held in Wilson v. Boyce, 92 U. S. 320, that a statute creating a lien upon "the road and property of the company" took effect to include lands disconnected with the road. It was said that a deed "of all my estate," or of "all my lands wherever situated," passed title. 1 Jones, Mortg. § 65; Wilmington & W. R. Co. v. Reid, 13 Wall. [80 U. S.] 264; [Raleigh & G. R. Co. v. Reid, Id.] 269. As to property already acquired, this description could be made certain by extraneous evidence, but it would be impossible by such a description, in conveying subsequently acquired lands, to designate them; and as against creditors the description must be reasonably certain, or it does not operate as notice. 1 Jones, Mortg. §§ 66, 528, and cases cited; Seymour v. Canandaigua & N. F. R. Co., supra; Dinsmore v. Racine & M. R. Co., supra; Shamokin Valley R. Co. v. Livermore, supra. The principle of Wilson v. Boyce cannot be applied to lands not already owned at the time the deed was made, without wholly breaking down the rules of law which require the mortgagee to give notice by the mortgage of the property claimed under it. No case that I have found gives any support to the doctrine that a grantor may convey by that description alone "all the lands he may subsequently acquire," and thereby pass every parcel of land which may afterwards become his own. Parties may, as a security for their debt, mortgage unsurveyed lands by an agreement to purchase them, when not yet acquired, as in Wright v. Shumway [Case No. 18,093], and other cases. And no doubt a railroad company might, by contract, agree that the mortgage should cover all lands which should be subscribed to it for stock, or to be granted to it by the government in aid of its construction, or the like description; but every such contract, if not designating by metes and bounds the lands to be acquired, should indicate with reasonable certainty the particular property, so that all persons would know what was intended to be conveyed. And I think, in such cases, the power to mortgage would be limited to such lands as the company, at the date of the instrument, had an expectation of obtaining, or to such lands as could be designated in the agreement itself, as those upon which it was to operate.

The result is that the prayer of the petitioners must be granted, and their judgment liens held paramount to the mortgage.

NOTE [from original report]. In Sutherland v. Lake Superior Ship Canal Co. [Case No. 13,643], decided at Detroit, March, 1874, Judge Emmons lays down some important rules of practice in foreclosure cases, viz.:

Parties in Equity Necessary. Prior incumbrancers are necessary parties to a bill brought by a junior mortgagee against a mortgagor his assignee in bankruptcy, if there are real doubts as to the amounts due or as to the property which their liens embrace.

Doubtful Interest—Sales in Equity. Where any doubt exists as to its character and extent, a court of equity will not decree the sale of an interest capable of being reduced to a certainty.

Foreclosure of Mortgage—Practice. If a subsequent incumbrancer is already brought before the court by a prior one, an original bill, subsequently brought by him to foreclose his mortgage, will not be entertained. In the first suit full relief may be had, with or without a cross-bill, according to circumstances.

Independent Suits. Where property is in the hands of a receiver, parties having an interest, and more especially active parties, will not, without leave of the court, be permitted to enforce their rights by an original suit. If the relief may be had in the pending litigation, such leave will not be granted.

Mortgage Trustee—Separate Suit by. A subsequent mortgage trustee appeared and submitted to a receiver of the estate, and resigned pendente lite. Without leave had his successor filed an original bill of foreclosure: Held, that it was both unwarranted and unnecessary.

Mortgaged Premises—Sale. Mortgaged premises may be sold free from incumbrances by a court of equity, remitting the lien holders to the proceeds at the suit of subsequent incumbrancers or other parties having rights in the equity of redemption.

Practice in United States Courts where Possession of Property is in State Courts—Power of Federal Court to Order Institution of Suits. The decision in the case of Marshall v. Knox, 16 Wall. [83 U. S.] 551, construed. It is held that notwithstanding that decision, the circuit court has the power to order all matters pending therein to be adjudicated by an original suit where the property is in possession of the state court by proceedings commenced before the bankruptcy; the suit in the circuit court to be subsequently brought by an assignee in bankruptcy.

Bill by Assignee to Sell Mortgaged Property. A bill will be entertained by the circuit court, brought by an assignee in bankruptcy, against several mortgagees and others who are lien holders, for the purpose of ascertaining the amounts due, and to sell the property free from all liens.

Cross Bill—Its Office in Chancery Pleadings. If matters are germane and are connected with the subject of the litigation, they may be brought in by cross-bill. The matter introduced may be entirely new.

Transfer Pendente Lite. It is only in cases where the complainant parts with his interest and where defendant's rights are transferred by death or by operation of law, as by bankruptcy or the insolvent laws, that a transfer pendente lite, need be noticed by litigants in courts.