309 So.2d 199 (1975)
POTTSBURG UTILITIES, INC., a Corporation, Appellant,
v.
John F. DAUGHARTY and Faye E. Daugharty, His Wife, Appellees.
No. U-492.
District Court of Appeal of Florida, First District.
March 17, 1975.
Marshall W. Liptak, Knight, Kincaid, Poucher & Harris, Jacksonville, for appellant.
O.O. McCollum, Jr., Thames & McCollum, Jacksonville, for appellees.
*200 BOYER, Judge.
This is an appeal from the Circuit Court of Duval County. The appellant was the defendant below and the appellees were the plaintiffs. The parties will be generally referred to in this opinion as plaintiffs and defendant.
This cause commenced with plaintiffs' complaint seeking damages arising from a break in the sewer line serving their apartment house. Defendant moved to dismiss the complaint and argued that a certain agreement between the parties rendered the plaintiffs responsible for maintenance and repair of the sewer lines. The court below construed the utility agreement to obligate plaintiffs to maintain only the lines located within the boundaries of their property. The plaintiffs filed an amended complaint and defendant filed an answer and counterclaim, seeking to recover certain additional charges under the utility agreement (based upon the Consumer Price Index) which plaintiffs had not been making. The cause came on for trial before the Circuit Court without a jury. At the conclusion of the trial the court below denied defendant's motion for involuntary dismissal made at the close of plaintiffs' case and entered judgment for plaintiffs. The court's judgment also denied recovery to defendant under its counterclaim based on the Consumer Price Index clause in the agreement. Defendant then perfected this appeal.
The record reveals that in September, 1961, defendant, a private utility company, entered into a written agreement to provide sewer service to Landon Imperial Apartments, Inc. In September, 1970, plaintiffs acquired the Landon Imperial Apartments and succeeded to the rights and obligations of the "Consumer" in said utility agreement. About April 1, 1973, a break occurred in the sewer lines constructed by the consumer outside the consumer's property. Defendant called upon plaintiffs to repair the break, which plaintiffs did at a cost of approximately $4,500. Thereafter, plaintiffs, contending they were not obligated to repair the lines, brought the instant action to recover the cost of repairs.
After the commencement of plaintiffs' action, defendant discovered that plaintiffs had not been paying the full charges for sewer service required by the utility agreement and thereupon filed its above mentioned counterclaim to recover the unpaid portion of the sewer charges.
The utility agreement between the defendant as the "Company" and plaintiffs as "Consumer" provides in Paragraph 2 that the
"Consumer will construct and maintain, in a condition satisfactory to the `Company,' all sewerage lines that are necessary to service the Consumer's property. Said sewerage lines shall include those located within the boundaries of the Consumer's property as hereinafter designated."
Defendant maintains that this language clearly obligates the consumer to maintain and repair all sewerage lines necessary to service the consumer's property without regard to whether such lines are inside or outside the boundaries of plaintiffs' property. We agree.
The court below, however, agreed with plaintiffs that Paragraph 2 should read
Consumer will construct and maintain only those lines located within the boundaries of the Consumer's property.
In so determining, the trial judge rewrote the contract of the parties: That he was not permitted to do.
The contract clearly provides, and should be construed to mean that the consumer
will construct and maintain all sewage lines necessary to service Consumer's property, including those located within the boundaries of the Consumer's property.
*201 The dispute over the proper construction of the contract centers on the significance of the phrase "Said sewerage lines shall include ...". Plaintiffs argued in the court below that the phrase "shall include" is one of limitation and is equivalent to "shall be restricted to" or "shall mean only". In support of this construction, plaintiffs relied upon the rule of Ejusdem Generis; that is, where both general and specific language are used in a contract, the specific language will govern where there is a conflict. Applying that rule, the court below found that the reference to the consumer's property was meant to limit plaintiffs' obligation to maintain only the portion of the sewerage lines located within the boundaries of their property.
The above mentioned rule of construction is applicable, however, only where there is some inconsistency or ambiguity in the contract and the meaning of the general provision is doubtful and requires clarification. (17A C.J.S. Contracts § 313) Where both the general and special provisions may be given reasonable effect in the context of the contract both provisions must be retained and given whatever meaning the words employed convey.
In this instance, there is nothing doubtful or ambiguous about the language "all sewage lines that are necessary to service the Consumer's property." The phrase needs no further clarification nor amplification. It is clear that the plaintiffs are not obligated to maintain all of the defendant's sewer system since the obligation to maintain is coupled with the obligation to construct. The reasonable construction of the contract is that the consumer is obligated to maintain all of the lines that their predecessor constructed, just as the language employed implies. The specific reference to the consumer's property merely eliminates any possibility that "all sewage lines that are necessary to service the Consumer's property" could be construed to mean only those lines necessary to bring service to the consumer's property line.
Words in a contract are presumed to have been used with their ordinary and customary meaning. Contrary to plaintiffs' contention, the phrase "shall include" is frequently, if not generally, used as a word of extension or enlargement rather than one of limitation or enumeration. (American Surety Company v. Marotta, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933); United States v. Gertz, 249 F.2d 662 (9th Cir.1957); Koenig v. Johnson, 71 Cal. App.2d 739, 163 P.2d 746, Cal. App.3d 1945) It is not a phrase of all embracing definition, but connotes simply an illustrative application of the general principle. (Federal Land Bank of St. Paul v. Bismark Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941)) Webster's dictionary also notes that "include suggests the containment of something as a constituent, component, or subordinate part of the larger whole." Paragraph 2 of the utility agreement, therefore, simply provides that the lines "located within the boundaries of the Consumer's property" are a "constituent, component, or subordinate part of the larger whole," the larger whole being, of course, "all the sewerage lines necessary to service Consumer's property."
Courts have held that a testamentary gift of "all of my property," followed by an enumeration of specific items which the testator's personal property shall include, is a gift of all of the testator's personal property and is not limited to the enumerated property. (See In re Douglass' Estate, 70 Cal. App.2d 279, 161 P.2d 66, Cal. App.1st 1945; In re Goetz, 71 App.Div. 272, 75 N.Y.S. 750 (1902))
Likewise, where a mortgage is given which encumbers all of a mortgagor's property including certain enumerated property, the lien of the mortgage is not limited to the enumerated property. (See Calhoun v. Memphis & P. RR Co., 4 Fed. Cas. 1045 (Cir.Ct.W.D.Tenn. 1879)) Accordingly, in the instant case, plaintiffs' obligation is to maintain "all sewerage lines" constructed by their predecessor and it is not limited to an enumerated portion *202 of the lines: The agreement so provides clearly and without ambiguity.
The court below voiced perplexion by the presence of the reference to the boundaries in the consumer's property and the inclusion of the exact legal description. "Why go to all the trouble ...?" queried the court, if not to restrict the obligation to maintain. The preamble to the agreement, however, obligates defendant to provide sewer services to "a location hereinafter designated." The parties obviously went "to all the trouble" of attaching a legal description, not to limit the consumer's obligation to maintain, but to designate the location where defendant was obligated to provide sewer service.
At the trial, the judge stated:
"I gave the language of the contract in my order, the construction that I felt it ought to have although .. ., I think the inescapable reference is that the language was to me at that time and maybe still is ambiguous ..."
The trial court was not authorized to alter or add to the terms of the written agreement between the parties in order to relieve one party from what might appear to be an improvident bargain. (International Expositions, Inc. v. City of Miami Beach, Fla.App.3rd 1973, 274 So.2d 29) Thus, the court below was not authorized to alter the agreement of the parties by inserting the word "only" after "shall include" to reach the construction the court "felt it ought to have." Where a contract is plain and unambiguous, there is no room for, and the court may not resort to, construction or interpretation, but must apply the contract as it is written. (McGhee Interests v. Alexander National Bank, Sup.Ct.Fla. 1931, 102 Fla. 140, 135 So. 545) The learned trial judge should have applied the utility agreement according to its plain and clear meaning and, therefore, erred in granting judgment for plaintiffs on the claim made by their complaint.
However, the trial judge properly denied recovery on defendant's counterclaim.
The utility agreement provided that the consumer would pay a base rate of $3.50 per month per apartment, which rate would increase in direct proportion to the Consumer Price Index. The parties stipulated that plaintiffs paid only $3.50 per apartment until after the commencement of this action. The evidence also shows that defendant occasionally invoiced plaintiffs based on $3.50 per apartment: About 25% of the time, according to the testimony. "[M]ost of the time" though, plaintiffs did not wait for an invoice and just sent the money in. Neither the plaintiffs nor defendant's employee responsible for billing plaintiffs was aware of the existence of the escalation clause. On this evidence, plaintiffs argued and the court held that defendant had waived the escalation clause. We again agree, as to the period up to the time that defendant commenced invoicing in accordance with the escalation clause.
The learned trial judge entered a memorandum opinion explaining his final judgment. With reference to the point here under consideration he said:
"Defendant, under this evidence, has waived its otherwise theoretical right to greater monthly fees on apartments rented, as augmented by the increases in the Consumer Price Index. Our Supreme Court, in Kimbal v. Travelers Ins. Co., 1942, [151 Fla. 786,] 10 So.2d 728, 730, after remarking that `it is assumed that the terms and conditions of the policy were well known to the insured', declared that `the contract of insurance was in writing and before (sic) the employer, the insured and the beneficiary, and the parties are charged, by law, with a knowledge of its legal effect and operation.' This philosophy has been presaged by Massachusetts Bonding & Ins. Co. v. Hoxie, Fla., 1937, [129 Fla. 332,] 176 So. 480, 482; holding that the party *203 there `was charged with the knowledge of the contents of those policies and he knew, or should have known, that the policies purported to agree to indemnify the assured against liability for an accident which had already occurred, and of which he gave the insurance company no notice or information.' In Kennedy v. Vandine, Fla., 1966, 185 So.2d 693, 696, the Court concluded that from the fact that the husband had lived in Miami since the divorce, `knowledge of' the `facts' that it was `the decedent wife (who) had returned the property for taxation as hers solely, and had paid taxes on it as such until her death, and that she had at all times remained in the sole possession of it ... was, therefore, chargeable to him.' Alabama Butane Gas Co., et al. v. Tarrant Land Co., Ala., 1943, [244 Ala. 638,] 15 So.2d 105, 109, was a decision that `held the leassees and those holding under them are charged with notice of the terms of the lease and are bound by its conditions.' It is well recognized doctrine that the `knowledge' essential as a foundation for invoking the voluntary relinquishment of a `known' right, may be constructive, as distinguished from actual knowledge. Hanz Trucking, Inc., v. Harris Brothers Co., etc., Wisc., 1965, [29 Wis.2d 254,] 138 N.W.2d 238, 244 [5]; and Alsleben v. Oliver Corp., Minn., 1959, [254 Minn. 197,] 94 N.W.2d 354, 358-359 [8-10]."
We adopt the above quoted portion of the memorandum opinion, insofar as it applies to those payments which became due during the period that both parties were ignoring the escalation clause based on the Consumer Price Index. However, we find nothing in the record to support any contention that by temporarily waiving the increased charges which could have been made under the contract the applicable provision was forever abandoned. Just because a party entitled to payments waives or forgives some does not mean that he is bound to have waived or forgiven all. When the dispute arose between the parties relative to maintenance of the sewer line defendant was fully justified in thereafter exacting payments in accordance with the provisions of the contract. Such action constituted neither imposition of a penalty nor spite, but only a resort to a provision of the contract which had been temporarily waived.
Having resolved the issues necessary to a disposition of this cause, we do not consider the other points raised by appellant.
Reversed and remanded for further proceedings consistent herewith.
RAWLS, C.J. and McCORD, J., concur.