THE McGHEE INTERESTS, INC., *Plaintiff in Error,* vs. ALEXANDER NATIONAL BANK, a corporation organized and doing business under the laws of the United States of America, BENDER-NICHOLS, INC., and R. W. PILLSBURY, *Defendants in Error.*

135 So. 545.

Division B.

Opinion filed June 23, 1931.

Petition for rehearing denied January 4, 1932.

142

*Sutton, Tillman & Reaves,* of Tampa, for Plaintiff in Error;

*Mabry, Reaves & Carlton* and *Spear, Viney & Pearce* of St. Petersburg, for Defendants in Error.

DAVIS, J.—This is an appeal from a final decree of the Circuit Court of Pinellas County, in Chancery, construing an escrow agreement and ordering a distribution of the escrowed funds. The suit was brought by the Alexander National Bank, the escrow agent, against The McGhee Interests, Inc., a corporation, Bender-Nichols, Inc., a corporation, and R. W. Pillsbury, the parties for whom the bank acted as such agent. The court below found against Pillsbury, who took no appeal. The principal contentions urged here are therefore between the other parties.

The McGhee Interests, Inc., as owner, had made a contract with Bender-Nichols, Inc., as agent, dated September 24, 1924, whereby the agent was to sell a large area of land which was being subdivided and developed as urban property by the owner. For its services under the contract the agent was to receive 28% of the gross sales price of each lot, to be paid at the rate of 50% of the contract price of each sale as said price was paid in.

The agent, Bender-Nichols, Inc., operated under this contract until the spring of 1925, when differences arose between it and the developer, The McGhee Interests, Inc. These differences resulted in another contract between the same parties dated May 29, 1925. Briefly, this contract which was called an escrow agreement, provided that the Alexander National Bank should receive from the McGhee Interests, Inc., contracts of lot purchasers aggregating the unpaid amount of $291,764.13, and as said contracts were paid, the bank was authorized to distribute the money between The McGhee Interests, Inc., and Bender-Nichols, Inc., until Bender-Nichols, Inc., had been paid $62,308.36, more or less, according to the terms of the contract.

The escrow agreement, together with an escrow letter dated May 26, 1925 (but intended to be dated May 29th), was deposited with the Alexander National Bank, and it is as to the interpretation of these last mentioned documents that this appeal relates.

Under the original agreement between the parties the Bender-Nichols, Inc. was to receive a total of 28% of the purchase price of each separate lot sold for The McGhee Interests, Inc. This 28% was provided to be paid out of moneys received from lot purchasers, 50% to go to The McGhee Interests, Inc., and 50% to go to Bender-Nichols, Inc., as the money came in from the lot purchasers and to continue until the full amount of 28% commission was realized by Bender-Nichols, Inc., on each lot.

The contention of counsel for The McGhee Interests, Inc., in the court below was and is here to the effect that under the escrow agreement Bender-Nichols, Inc., was to continue to receive the identical participation provided for in the original sales agreement that is, 50% of the moneys paid by each lot purchaser until 28% of the gross sales price of each contract had been paid to Bender-Nichols, Inc., as its commissions, at which time the interests of Bender-Nichols, Inc., should cease.

On the other hand the contention of Bender-Nichols, Inc., and of the Alexander National Bank is that the escrow agreement changed the sales agreement so that Bender-Nichols, Inc., was no longer to be paid a part of the collection of each lot sold, but that contracts aggregating $291,764.13 were to be deposited in escrow and that Bender-Nichols, Inc., was to receive 50% of the aggregate payments on all said contracts until it should be paid a definite amount agreed to be due it for all commissions earned on all the contracts. This definite amount is alleged to have been the sum of $62,308.36, mentioned in the escrow letter.

It appears from the evidence that The McGhee Interests, Inc., promptly objected to the last mentioned interpretation placed on the agreement by the Alexander National Bank in favor of Bender-Nichols, Inc. This objection appears to have been repeated on more than one occasion to the officers of the Alexander National Bank until it finally culminated in a formal letter of protest served on the bank by counsel for The McGhee Interests, Inc.

It is suggested in the pleadings and in the evidence submitted by the McGhee Interests, Inc., that the Alexander National Bank was not altogether disinterested in making the interpretation it did of the contract between The McGhee Interests, Inc., and Bender-Nichols, Inc., because of the fact that Bender-Nichols, Inc., was indebted to the bank, which indebtedness was being in part paid by the commissions which the bank received and credited to the account of Bender-Nichols, Inc. It was also established by the evidence that the same attorney who advised the course of conduct for the bank to pursue in favor of Bender-Nichols, Inc., at one time represented Bender-Nichols, Inc., in connection with the same transaction, although it appears that such attorney retired from any connection with Bender-Nichols, Inc., when it appeared that its interests and that of the bank were about

to come into conflict, said attorney being a Director of the bank as well as its legal advisor.

In view of the conclusion we have reached as to the interpretation of the written evidences of agreement on their face, it is unnecessary to discuss the detailed testimony which was taken in the cause in order to establish the intention of the parties on the theory that the writings themselves were ambiguous and needed explanation.

Construing such writings together as we must do in such cases (Escambia Land Co. v. Ferry Pass Inspectors Ass'n, 59 Fla. 239, 52 So. 715, 138 Am. St. Rep. 121), it appears that it was mainly the purpose and intention of the parties to terminate the existing relations between The McGhee Interests, Inc., as owner and developers on the one hand, and Bender-Nichols, Inc., as sales agents on the other; that incidental only to the termination of this relationship was it necessary for the parties to take into account the commissions which had been theretofore earned by Bender-Nichols, Inc., on contracts negotiated by them as sales agents prior to the termination of this relationship; that it was in order to fix the total amount of commissions *earned* that an audit was made and the amount of $62,308.36 was agreed on as an outstanding indebtedness for the commissions *earned*, if all the contracts should be collected in full.

It then appears that the parties intended to outline the terms of payment, and to secure payment by making the deposit in escrow of the contracts on which the commissions should be paid, and that in doing so the parties did not evince any intention in the writing to dispense with the previous existing agreement as to the manner in which payment should be made out of the amounts collected.

Ambiguities should arise from the words used in a contract before this court may resort to interpretation or construction to ascertain the intention of the parties to it. In other words, ambiguity must exist in the contract,

not outside of it. It is well settled that where the purpose designed to be accomplished by a contract is ascertained, the meaning and effect which must be given to ambiguous language used should comport with the intended purpose disclosed by the contract. Brown v. Beckwith, 60 Fla. 310, 53 So. 542. It is also the rule that where the rights and interests of the parties are definitely and clearly stated, the terms of the contract, fairly interpreted, shoud control, for it must be assumed that the intent of the parties is as it is distinctly and positively expressed by them. A. & St. A. B. Ry. Co. v. Thomas, 60 Fla. 412, 53 So. 510. And the contract itself being in writing, must be construed as a whole. First National Bank v. S. F. & W. R. Co., 36 Fla. 183, 18 So. 345.

The contention of the appellees is that the escrow agreement changed the sales agreement so that Bender-Nichols, Inc., was no longer to be paid a part of the collection on the price of each lot sold, but that contracts aggregating $291,764.13 were to be deposited in escrow so that Bender-Nichols, Inc., could receive 50% of the aggregate payments on all of said contracts until it should be paid a definite amount agreed to be due it, which amount was that sum tentatively fixed in the escrow agreement at $62,308.36.

But the dispute we are considering is not as to the *amount* due and owing to Bender-Nichols, Inc. The dispute is as to how and when the agreed amount is to be paid. The insertion of the $62,308.36 figure in the agreement was apparently to identify and make certain the extent to which Bender-Nichols, Inc., had earned the right to commissions on sales up to the time the relations between them and their principal terminated. But having been arrived at and agreed upon, the amount of such indebtedness was not to be paid in a different way, but in the same way, from future collections on the contracts, as had been agreed on with reference to prior collections.

The new contract was made for the benefit of Bender-

Nichols, Inc. It was to wind up a pre-existing relationship which had contemplated payment in a particular way. That way was to deduct 28% commission out of the sales price of each lot. This was to be discharged by applying 50% of each installment payment received on each lot until the agent got its full 28%. The language of the new agreement is presumed to have been selected and inserted in the contract by Bender-Nichols, Inc., because the new agreement was for its benefit. Any ambiguity in the language used is therefore to be construed more strongly against it as the party presumed to have selected the language. Capital City Bank v. Hilson, 59 Fla. 215, 51 So. 853. The language employed in stating what was to be done by the bank in the same matter is perfectly consistent with the idea that in winding up the old relationship under the substituted contract that the amount of the total commissions earned was to be first agreed upon, and that thereafter the agreed amount was to be settled and paid in installments in the manner as such commissions would have been settled for had the relationship not been terminated.

There is no occasion for the application here of the doctrine laid down in Oxford Lake Line v. First National Bank, 40 Fla. 349, 24 So. 480, as contended for by appellees. That case holds that where there are two reasonable constructions of an escrow agreement, and the escrow agent in good faith adopts one of the two constructions, the construction adopted is binding upon the principal. Here the agreement is reasonably clear as to what was intended. It is established beyond doubt that The McGhee Interests, Inc., promptly put the bank on notice with reference to its intention to insist on its rights. There can consequently be no waiver implied.

The motion to dismiss the appeal, which was deferred until final hearing, is denied. The transcript shows a sufficient entry of appeal to comply with Chapter 11890, Acts of 1927, to give this court jurisdiction over the sub-

ject matter. Jurisdiction over the parties moving to dismiss, if not otherwise, obtained by the entry of appeal itself, was completely acquired by general appearance and filing briefs by such parties in this court. McJunkins v. Stevens, 88 Fla. 559, 102 So. 756.

For the reasons pointed out, the final decree appealed from must be reversed and the cause remanded for further appropriate proceedings not inconsistent with this opinion.

It is so ordered.

WHITFIELD AND TERRELL, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.