CARROLL, DONALD K., Chief Judge.
Three of the counter-defendants in an accounting suit have filed an appeal, and a fourth has filed a cross-appeal, from an adverse final decree entered by the Circuit Court for Duval County.
For the sake of brevity and clarity in our discussion of the facts in this complicated case, we shall refer to the appellants generally as Rivers, the cross-appellant as Donald, and the corporate appellee as Luf-kin.
The basic facts pertinent to the present consideration are: In 1956 Lufkin, a manufacturer of commercial trailers and parts, entered into a franchise agreement with Rivers providing for the distribution by Rivers of Lufkin trailers and other products within a designated area. On May 21, 1957, Rivers, being indebted to Lufkin in the amount of $73,976.63, gave to the latter a note for the said amount, payable on or before July 21, 1957, with interest at six per cent. Rivers made two payments on the *775 note, so that on July 21, 1957, the due date, a balance of $52,143.99 was owed by Rivers.
The principal question raised by the appellants in this appeal concerns transactions involving three Dorsey trailers which Rivers leased to a dairy company and then surrendered to Lufkin. The essential facts of these transactions are as follows:
Two of the said trailers were leased by Rivers on July 1,1957, to the dairy company for a term of six months, with the option in the company to purchase the trailers for $18,150.00, less certain adjustments according to the amount of rent paid. On August 21, 1957, Rivers assigned this lease to Lufkin, the assignment providing that Rivers “does hereby sell, assign, transfer and deliver” to Lufkin the property described in the lease. On September 13, 1957, the Motor Vehicle Commissioner of Florida issued a title certificate on each of the two trailers, showing Rivers as the owner and Lufkin as the holder of a lien dated August 21, 1957, in the amount of $9,075.00.
The third Dorsey trailer was dealt with in substantially the same way, except that the lease provided for the dairy company to have an option to purchase the trailer for $9,075, less certain adjustments, and that the lease was assigned to Lufkin on December 30, 1957, and on February 5, 1958, the title certificate was issued showing a lien, recorded on February 21, 1957, in favor of Lufkin in the amount of $7,500, which was the amount then immediately due and payable by Rivers under its note to Lufkin.
Near the end of 1958, the leases on the three trailers expired, and Lufkin instructed the dairy company to turn the trailers in to Lufkin by placing them on the lot of a designated transfer company in Jacksonville, which the dairy company did. Beginning on January 1, 1959, and for a period of more than three years, the three trailers were in the possession and control of Luf-kin. During that period they were moved out of the State of Florida, and Rivers had no knowledge of their location, condition, or use.
After the taking of evidence in this accounting suit, the Circuit Court entered its final decree in which it found for Lufkin as to the first two trailers in the amount of $8,516.24 and $8,245.53 respectively, and as to the third trailer the amount of $6,983.52. The mentioned amounts included principal, interest, and attorneys’ fees. The court further ordered in the final decree that Luf-kin deliver the three trailers to Rivers “within 70 days after the date of this decree and at or before the levy of execution on this portion of the decree, and that upon the failure of the defendant, Lufkin, to deliver said trailers, or any one of them, Lufkin shall satisfy of record that portion of this decree applicable to the trailer or trailers not so delivered to the plaintiffs.”
These provisions of the final decree give rise to the principal point made by the appellants in this appeal — that “a lien claimant who takes possession of the subject personal property in partial satisfaction of the secured debt, holds title papers thereto and keeps the property as its own for a protracted period, should not be allowed to return it months later to the former -owner and then have a money judgment for the previously-satisfied debt with interest and attorneys’ fees added.”
This point, we think, is well taken, chiefly because of the application of the doctrine of election of remedies, a doctrine firmly established in the law. In our view, Lufkin made the election near the end of 1958 in demanding and taking title to and possession of the three trailers, an action which clearly affected vitally the rights of the parties involved. Rivers thus lost the title and revenue from these trailers, amounting to $670 a month under the dairy company leases, as well as losing the use value of the trailers for over three years. Lufkin as a lien holder presumably had a right to foreclose the lien, to sue on its debt claim, or to take possession and title to the lien property. In electing the last remedy Lufkin should *776 be held estopped from later taking- either of the other remedies. In any event it seems unjust more than three years later to permit Lufkin to reverse the election of remedies, in view of Rivers’ loss of use and normal sales value of the trailers and their ■depreciation and obsolescence, especially when Lufkin is allowed to recover not only for the debt but also interest and attorneys’ fees.
It is our conclusion, therefore, that the court erred in that portion of the final decree awarding in favor of Lufkin a certain amount as to each of the three trailers, as set forth above.
The other points raised in this appeal by the appellants and cross-appellant have been considered and found without substantial merit. The final decree appealed from, therefore, is reversed as to the portion discussed in the preceding paragraph, and is otherwise affirmed, and the cause is remanded for further proceedings consistent with the views herein expressed.
Affirmed in part and reversed in part.
STURGIS and RAWLS, JJ., concur.