CARROLL, DONALD K., Judge.
In two consolidated actions to recover deficiency balances due under several conditional sales agreements, the defendants have appealed from final judgments entered for the plaintiffs by the Circuit Court for Escambia County.
The principal question presented for our determination in this appeal is whether the fact that the plaintiffs repossessed and sold the trucks covered by the said agreements from the retail buyer precludes the plaintiffs from proceeding against the defendants as guarantors of the alleged deficiencies.
Briefly stated, the basic facts established in this record are as follows:
The corporate defendant in these cases is S & W Motors, Inc., a corporation dissolved in 1964, which will hereinafter be referred to as S & W. The other two defendants, W. L. Wheeler and C. W. Smith, are sued as the surviving trustees of S & W, a dissolved corporation. Since the basic facts apply equally to Mack Trucks, Inc., a corporation, the plaintiff in one of the cases, and to Mack Financial Corporation, a corporation, the plaintiff in the other case, each plaintiff will hereinafter be referred to as Mack.
For a number of years S & W was a franchised dealer for Mack Trucks. The customary way of doing business was for S & W to enter into a retail installment contract with a buyer for the sale of a Mack truck. S & W would then assign its rights as the seller of the truck to Mack. As the distributor, S & W would also execute a guaranty of the buyer’s obligation, which guaranty is printed on the sale retail installment contract, along with an assignment of the contract to Mack. This guaranty provision, in which S & W is referred to as the undersigned and Mack as the as-signee, reads as follows:
“In consideration of the purchase of the foregoing Conditional Sale Agreement (hereinafter called the “Agreement”) by Mack Financial Corporation (hereinafter called the “Assignee”) and for other good and valuable consideration, the undersigned hereby unconditionally guarantees the performance of each and every obligation of the vendee in the Agreement, including the payment of all sums due and to become due from the vendee thereunder; and if the vendee shall default in the performance of any such obligations, or in the event of any other condition or occurrence by which the total balance remaining unpaid under the Agreement becomes, or at the option of the holder of the Agreement may become, immediately due and payable, then the undersigned shall upon demand immediately pay to the Assignee all sums due and to become due under the Agreement, upon the payment of which sums the Agreement shall be reassigned by the Assignee to the undersigned without warranty and without recourse.
“The Assignee shall be under no obligation to the undersigned to take any steps whatever toward the enforcement *72 of the Agreement against the Vendee or against the property covered by the Agreement. If the Assignee chooses to and does repossess the property covered by the Agreement, the undersigned shall pay to the Assignee immediately upon demand any deficiency or balance that may be due under the Agreement and/or by law after crediting the proceeds of the sale of said property, less the expenses of retaking, storing and selling the property, including attorney’s fees and the cost of repairs and other reasonable costs of preparing the property for sale, as specified in the Agreement.
• “The undersigned agrees that no waiver or variation of any of the terms of the Agreement,- including any extension of payment of sums due thereunder, will affect the liability of the undersigned hereunder. The undersigned hereby waives notice of the exercise by the As-signee of any right under the Agreement, including notice of any repossession or foreclosure or the time and place of any sale. The provisions of this guarantee shall inure to the benefit of the successors and assigns of the Assignee.”
The truck sold under each of the retail installment contracts involved in the instant cases was directly repossessed from the buyer by Mack because of the buyer’s default in making the installment payments as agreed. Mack then sold the truck, and claims in these cases a deficiency against S & W under its above guaranty — the difference between the resale price and the balance due under the retail installment contract.
S & W principally contends in this appeal that when Mack thus repossessed a truck from the retail buyer, that action constituted an effective election of remedies so as to prelude Mack from proceeding against S & W for an alleged deficiency. S & W also contends herein that Mack had no right or power under the guaranty, quoted above, to sell the truck after repossessing it in order to establish a deficiency. In a third contention S & W invokes the general rule that a guarantor is released or discharged of liability when it appears that, by reason of some act or omission on the part of the creditor, the principal debtor has been discharged of his obligation without satisfaction thereof.
With respect to the first contention above, we recognize that the doctrine of election of remedies is firmly established in Florida. In Voges v. Ward, 98 Fla. 304, 123 So. 785 (1929) the Supreme Court of Florida held that a seller or his assignee cannot take back the property and then sue for a debt or a deficiency. This court has recognized that doctrine in many cases, including our decision in Rivers Body Factory, Inc. v. Lufkin Foundry, Fla.App., 146 So.2d 774 (1964). In this last case a manufacturer had sold certain trailers to a distributor, retaining a lien for the balance due. After the distributor leased the trailers to a third party, the manufacturer repossessed them from the said party. Later the manufacturer filed an action to hold the distributor liable for the purchase price of the trailers, but on appeal we held that the manufacturer had made a valid election of remedies.
The doctrine of election of remedies, exemplified in the Rivers Body Factory case, supra, would no doubt be applicable in the case at bar if the guaranty quoted above had merely provided that S & W would underwrite the purchase price of the trucks, but the guaranty provides substantially more than this, as we shall discuss below, so we consider that that doctrine finds no application here.
In considering this appeal it is vital to remember that the essence of the cause of action involved here is contractual in nature, so we must look to the-provisions of the guaranty agreement in order to determine the rights of the parties thereto.
Analyzing, then, the guaranty quoted above, we find in the first paragraph there *73 of a provision for the liability of S & W for the balance due if the buyer defaults on payments under the retail installment contract. In the second paragraph of the guaranty, however, reference is made to repossession of the property by the assignee, Mack, and the liability of S & W for the deficiency or balance due after crediting the proceeds of the sale of the said property less the expenses of retaking, storing, and selling the property. The third paragraph provides for the waiver by S & W “of notice of repossession or foreclosure or the time and place of any sale.”
Trying to be as fair as possible to the positions of the parties to this appeal in our construction of the above guaranty agreement, we must conclude that S .& W and Mack in making that agreement contemplated that the trucks might be repossessed and sold, but the method of selling the repossessed trucks in order to ascertain the deficiency or balance due from S & W is not set forth with any definiteness in the guaranty agreement.
On this subject of the method of sale S & W makes the following argument in its appellate brief: “The real inequity in this case is that the appellant has been deprived of its right to resell the vehicle. If the appellant had been allowed to repossess and resell there would probably have been no loss (or at least the loss would have been substantially minimized). The appellant was in the business of selling trucks at retail. It maintains a lot and staff of trained salesmen plus a service department. The appellant was all set up to sell the trucks at the best retail price. The appellee was a manufacturer and had only wholesale outlets. Over the period of years the appellant had built up a substantial reserve with the appellee. This was possible because appellee was allowed to repossess and sell on its own.”
This contention of S & W would have been a logical contention for it to have made during negotiations with Mack as to the terms of the guaranty agreement, but an express provision for the sale of a repossessed truck was not incorporated into the parties’ guaranty agreement. Under these circumstances we are faced with the general rule established in this state that the courts are not empowered to remake a contract merely because one of the parties finds that he had made a bad bargain. In our recent decision in Florida East Coast Ry. Co. v. Atlantic Coast Line R. Co., Fla.App., 193 So.2d 666 (1967), we quoted the following as the correct statement of the rule:
“Interpretation of an agreement does not include its modification or the creation of a new or different one. A court is not at liberty to revise an agreement while professing to construe it. Nor does it have the right to make a contract for the parties— * *
On the other hand, an equally well established general rule is that, if ambiguities arise from the wording of a written contract, a court may construe or interpret the contract in order to asertain the intention of the parties thereto. Among the innumerable Florida cases recognizing this rule, see McGhee Interests, Inc. v, Alexander Nat. Bank, 102 Fla. 140, 135 So. 545 (1931), in which the Supreme Court of Florida said:
“Ambiguities should arise from the words used in a contract before this court may resort to interpretation or construction to ascertain the intention of the parties to it. In other words, ambiguity must exist in the contract, not outside of it. It is well settled that where the purpose designed to be accomplished by a contract is asertained, the meaning and effect which must be given to ambiguous language used should comport with the intended purpose disclosed by the contract. Brown v. Beckwith, 60 Fla. 310, 53 So. 542.”
As we read the guaranty agreement involved in this appeal and quoted above, we *74 think that no ambiguity exists as to the fact that, upon the buyer’s default, Mack has the power to repossess the truck and as to the fact there is to be a sale by someone of the repossessed vehicle in order to establish the amount to be paid by S & W under the guaranty agreement. We think, however, that ambiguities do exist in the wording of the guaranty as to who is to make the sale of the repossessed trucks and as to the manner and conditions of the said sale.
With respect to the question of who was to make the sale of the repossessed trucks, one provision of the guaranty agreement indicates that the contemplated seller is not S & W—the provision that S & W waives notice of the sale.
The provisions of the agreement, however, throw little or no light as to the conduct and character of the sale of the repossessed trucks—whether the sale should be public or private and, if private, what measures should be taken to assure that a fair price would be received for each truck at the said sale. In other words, could the agreement properly be construed to permit a corporation in the position' of Mack to sell the repossessed truck to an affiliated company for, say, one dollar as the basis for determining the amount owed by S & W under the guaranty agreement? There is no showing in the record before us, however, that this was done in the case at bar.
The guiding principle to be applied in the construction of an ambiguous contract is that such construction should accord with the intention of the parties in the contract. (See the rule quoted above from the decision in McGhee Interests, Inc. v. Alexander Nat. Bank, supra.)
The obvious intention of Mack and S & W in entering into the said guaranty agreement was to assure that the purchase price of the truck be paid in full, either by the buyer or S & W or both. In other words, the intention was that Mack be “made whole” but not that Mack be “unjustly enriched” through an unfairly low sale price for the trucks after repossession. We have read nothing in the agreement indicating that the parties intended or contemplated that Mack would have the right to sell a repossessed truck at any kind of sale and for any amount, regardless of its relation to fair market value, and thus use the proceeds of the sale as the basis for determining the amount owed by S & W under the guaranty. Such a right, if abused, could easily convert the guaranty agreement from its nature as a shield for Mack into a sword against S & W.
We, therefore, in keeping with what we conceive to be the intention of the parties in the guaranty agreement in question, construe the agreement as providing that the sale of the repossessed trucks, whether the sale is conducted by Mack or otherwise, he carried out in good faith and in a sincere endeavor to sell at least for the fair market value, before the amount of the sale proceeds (less the expenses of retaking, storing, and selling the property, including attorneys’ fees and the costs of repairs and any other reasonable costs of preparing the property for sale, as provided in the agreement) can be used as the basis for computing the sum owed by S & W under the terms of the guaranty.
As we mentioned above, we find nothing in the record before us which suggests that the sales of the trucks in question after repossession were not bona fide sales conducted in a sincere endeavor to sell for their market value, but, on the other hand, there is nothing in the record showing that the said sales were such bona fide sales. Under these circumstances, in order to determine the rights of the parties in the guaranty agreement, as we have construed it above, it is necessary that the record contain the evidence of the parties pertinent to the question whether the sale of the repossessed trucks involved here was conducted in good faith and in a sincere *75 endeavor to sell for at least the fair market value of the trucks.
Accordingly, the final judgment appealed from herein should be, and it is, reversed, and the cause remanded with instructions to hold a hearing for the purpose of receiving the evidence of all parties hereto on the question discussed in the last paragraph above, and then to enter a final judgment on the merits of this cause, in accordance with the views herein expressed.
Reversed and remanded with directions.
RAWLS, C. J., and JOHNSON, J., concur.