James H. BOWEN et al., Plaintiffs-Appellants,

v.

CULLMAN BROS., INC., Defendant-Appellee.

No. 26844.

United States Court of Appeals Fifth Circuit.

June 17, 1969.

Rehearing Denied Aug. 13, 1969.

S. Gunter Toney, Wilfred C. Varn, Toney & Guarisco, Ervin, Pennington, Varn & Jacobs, Tallahassee, Fla., for appellants.

Victor M. Cawthon, A. Frank O'Kelley, Charles H. Spitz, Tallahassee, Fla., Howard A. Seitz, New York City, Keen, O'Kelley & Spitz, Tallahassee, Fla., Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and COMISKEY, District Judge.

TUTTLE, Circuit Judge:

This appeal challenges the correctness of a directed verdict granted by the trial court in a contract case in which the court permitted parol evidence to explain what the court found to be ambiguous terms. The contract was one between Cullman Bros. and the appellant growers, under which the farmers or growers were advanced a certain sum per acre to help defray the large cost of growing the "shade tobacco;" after the tobacco was grown it was delivered to the Cullman Bros. warehouse for packing and warehousing and later sold. The agreement provided that out of the sales price Cullman Bros., known as the "packer" would recover all of its advances; it would be entitled to deduct the cost of packing and warehousing (with certain exceptions which raise the issue here before the court); it would charge interest at 5½% on money used for the above purposes and the packer would then sell the grower's crop.

The essential terms of the contract are here quoted in full:

"4. Grower and Packer agree to share profits and losses as follows: For purposes of computing profits or losses the cost of the crop shall be considered to be:

(1) All of the advances made by Packer, for which it has not been reimbursed by insurance proceeds.

(2) The cost of packing and warehousing crop exclusive of warehouse rental and use of Cullman Brothers personnel.

(3) Interest at 5½% on money used for the above purpose.

Packer agrees to sell Grower's crop and Packer has sole control as to the time and price of such sales, and after the cost of said crop has been computed as above, to pay one-half of any profits to Grower. In the event the proceeds of said crop does not equal its cost as above computed, Grower agrees to reimburse Packer an amount equal to one-half of the difference between net proceeds and the cost. Final settlement will be made when the tobacco is sold and Packer will provide a final settlement statement."

The first question arises from a determination by the trial court that the language in sub-paragraph 2 above "and use of Cullman Bros. personnel" was ambiguous. The appellants contend that Cullman was not entitled to charge as a "cost of packing and warehousing" any labor costs that represented wages or salaries paid by Cullman to *any* of its personnel, i. e., anyone on Cullman's payroll for packing and warehousing. Appellee, on the contrary, claims that the parties really intended to deny Cullman's right to charge as "cost of packing and warehousing" only the salaries and expenses of certain of Cullman's non-resident officials who, though headquartered in Connecticut, made occasional trips to the warehouse in Florida.

The trial court held the language ambiguous apparently because it could not be definitely stated which employees were within the class where "cost" should be excluded. The court then, after hearing testimony as to prior relations between the parties and what purported to be the custom and usage in the trade, held as a matter of law that costs could include the wages of *all* Cullman personnel except those who held supervisory positions.

The parties agree that in resolving the issue here presented, we look to Florida law. Jacksonville Terminal Co. v. Railway Express Agency, Inc., (5th Cir., 1962) 296 F.2d 256. Moreover, the parties agree to the underlying principle of law that is here applicable. The appellee in its brief says, "the general law applicable to all three subdivisions of that issue [the construction of the contract] has been fairly stated in the grower's [appellants] brief, i. e., "It is also the rule that, where the rights and interests of the parties are definitely and clearly stated, the terms of the contract, fairly interpreted, should control * * *." (Citing McGhee Interests, Inc. v. Alexander Natl. Bank et al. (1931) 102 Fla. 140, 135 So. 545). Looking further at the McGhee case, we find the following quotation, "Ambiguities should arise from the words used in a contract before this court may resort to interpretation or construction to ascertain the intention of the parties to it. In other words, ambiguity must exist in the contracts, not outside of it. It is well settled that where the purpose designed to be accomplished by a contract is ascertained, the meaning and effect which must be given to ambiguous language used should comport with the intended purpose disclosed by the contract. Brown v. Beckwith, 60 Fla. 310, 53 So. 542. It is also the rule that, where the rights and interests of the parties are definitely and clearly stated, the terms of the contract, fairly interpreted, should control, for it must be assumed that the intent of the parties is as it is distinctly and positively expressed by them. Atlanta & St. A. B. R. Co. v. Thomas, 60 Fla. 412, 53 So. 510. And the contract itself, being in writing, must be construed as a whole. First Natl. Bank of Florida v. SF & WR Co., 36 Fla. 183, 18 So. 345." 135 So. 545, 547.

In Indemnity Ins. Co. of North America v. DuPont, (5th Cir.) 292 F.2d 569 (1961) this court dealt with the parol evidence rule in the same terms quoting from the earlier Fidelity Phenix Fire Ins. Co. v. Farm Air Serv., Inc. (5th Cir., 1958), 255 F.2d 658, "A court called upon to determine the meaning of written contract such as those here involved looks primarily to the language of the contracts after first placing itself as nearly as possible in the position of the parties to them at the time of their execution." The court also quoted from Fidelity & Casualty Co. of New York v. Lott (5th Cir., 1960), 273 F.2d 500 where at 502 the court said, "Where the terms of a written contract are plain and unambiguous they alone are looked to to ascertain their meaning." In the indemnity Ins. Co. case, we then said, "The same rule is applied by the Florida courts (citing cases). Unless there is an ambiguity in the terms of the policy the extrinsic evidence is not admissible."

■ While a reading of the testimony of the witnesses produced by the appellee gives substantial basis for the trial court's conclusion that the language "Cullman Bros. personnel" meant something other than what was said,[1] we come to the conclusion that in a contract prepared by Cullman Bros. the words excluding "use of Cullman Bros. personnel" from the costs of packing and warehousing is too clear an expression of the intent of the parties that the cost of all Cullman Bros. personnel should be excluded to permit a legal conclusion that this language was ambiguous. There is simply no way by which this language could be found to permit a construction that all that was meant was the exclusion of the salaries and expenses of supervisory employees by Cullman. Under the Florida authorities, as recognized by this court, this term did not create an am-

---

1. Appellants make the point that the evidence given by such witnesses was really irrelevant to this particular contract, even though there had been an ambiguity, for it is contended that there were no contracts similar to the one between Cullman Bros. and these particular growers. It also oc-

curs to us that if the true effort by Cullman Bros. was to prove that the contract had included this language by mutual mistake it was open to the appellee to seek a reformation of the contract, which it did not do.

biguity, and therefore the action of the trial court in directing the jury to answer the special interrogatories as it did was error. We recognize that it is difficult to find much substance left to the parol evidence rule. There would be nothing left to the rule if a court can find that words which literally exclude "Cullman Bros. personnel" actually mean "all Cullman Bros. personnel who hold supervisory positions," by the reception of parol evidence.

■ We have two further questions raised that present an illustration of the distinction that must be made between what is ambiguous and what is too clear for oral explanation. Paragraph 2 provided that Cullman Bros. should be permitted to deduct "the cost of packing and warehousing" the crop, with the exclusions heretofore discussed. It is not apparent from the language of the contract what items of expenditure by Cullman go to make up "the cost of packing and warehousing" the crop. This language then, of course, is ambiguous, and parol evidence must be received to determine what goes into such cost of packing and warehousing. The trial court found that the undisputed evidence was to the effect that the expenditures for insuring the crop while in the warehouse was as a custom of the trade included in "the cost of packing and warehousing". This evidence was properly received to resolve this ambiguity. The judgment of the trial court with respect to this item cannot be found erroneous in light of the fact that no evidence to the contrary was introduced by the appellants.

So, too, with respect to the provision of the paragraph that authorized the packers to sell the product. This language is as follows:

> "Packers agrees to sell grower's crop and packer has sole control as to the time and price of such sales, and after the cost of said crop has been computed as above, to pay one-half of any profits to grower."

■ In making the final accounting, the packer deducted from the profits the amount paid by it to tobacco brokers by way of commissions. This was objected to by the growers on the ground that they did not expressly agree to the inclusion as a cost of selling of any such commission payments. Once again, we conclude that the language of this paragraph which gives the packer sole control as to the time and price of the sales and the provision that the packer had the power to sell the crop creates an ambiguity which must be explained by parol evidence. There is no effort in this language to define what is or is not included in the costs of sale. The trial court having found undisputed evidence for the proposition that brokerage was normally considered a cost or a part of the selling procedure could properly charge the jury that this was within the contemplation of the parties in the language used in the contract.

The several cases must be remanded to the trial court in order for the part of the judgments based upon the affirmative answer to special interrogatory No. 1 to be corrected. The answer to that interrogatory must be "No," for the payroll expenses as carried on the books of Cullman Bros. for the crop years involved are by the unambiguous terms of the language itself excluded as "cost of the crop." The judgment of the trial court is affirmed as to the other items, dealing with the cost of insurance and payments for brokers' fees in disposition of the crop.

We also agree with the judgment of the trial court respecting the disallowance of punitive damages, and the disallowance of the fees paid to accountants for appellant growers to assist in preparation of the claims that were the basis of the litigation.

The judgment is affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this opinion.