275 So.2d 317 (1973)
The NORTHWESTERN BANK, Appellant,
v.
George V. CORTNER, Appellee.
No. 72-73.
District Court of Appeal of Florida, Second District.
March 30, 1973.
*318 John T. Allen, Jr., Harrison, Greene, Mann, Davenport, Rowe & Stanton, and G. Robert Bolton, St. Petersburg, for appellant.
Sam Bucklew, of Bucklew & Ramsey, and William H. Frecker, of Frecker & Garcia, Tampa, for appellee.
HOBSON, Judge.
Appellant, The Northwestern Bank, appeals a judgment entered in favor of appellee, George V. Cortner, in a non-jury trial.
Appellant filed its complaint against appellee alleging that on July 28, 1965, appellee executed a Loan Guaranty Agreement guaranteeing a line of credit to Travelers Directory Services, Inc., Travelers Press, Inc., and Travelers Publishing Company, to the extent of $60,500. Said agreement provides, inter alia:
For and in consideration of the sum of One Dollar and other good and valuable considerations, in hand paid, the receipt whereof is hereby acknowledged, the undersigned hereby guarantees to The Northwestern Bank, its successor, successors, or assigns, payment at maturity of the bills, notes, checks, drafts, or other evidences of debt, not exceeding the sum of $60,500.00, either made or endorsed by Traveler's Directory Service, Inc., Traveler's Press, Inc., and Traveler's Publishing Company, already discounted or which may hereafter be discounted by said Bank together with all legal or other expenses of or for collection; demand of payment and notice of protest waived.
And I hereby declare this guaranty to be a continuing guaranty of the payment of such bills, notes, checks, drafts, or other evidences of debt, up to said sum of $60,500.00 either made or endorsed by Traveler's Directory Service, Inc., Traveler's Press, Inc., and Traveler's Publishing Company, until revoked by me in writing and a copy of such revocation delivered to said Bank. Such revocation does not constitute a waiver, cancellation, or affect in any way my guarantee, wherein debts were contracted with above corporations under the terms of this agreement prior to receipt of this notice.
The appellee also consented to the personal jurisdiction of the Courts of the State of North Carolina, and service of process by registered mail.
On September 1, 1965, appellant loaned Travelers Directory Service, Inc. the sum of $60,500, and Travelers then and there executed its promissory note for that amount. At the time the complaint was filed the sum of $31,985.74 plus interest was due on said note.
Answer and defenses were filed by appellee, admitting the execution of the Loan Guaranty Agreement, and alleging, among other things, that said guaranty was entered into between appellant and appellee subject to the terms and conditions of a certain Loan Agreement between appellant and Travelers executed August 2, 1965. Appellee further alleged that appellant, without the knowledge and consent of appellee, wholly failed to enforce the provisions of the Loan Agreement, and further allowed collateral required by the terms of *319 the Loan Agreement to completely disappear.
Upon trial, the trial judge entered a judgment in favor of appellee without stating findings of fact or conclusions of law as to the reasons for his judgment.
Appellant contends that the Loan Guaranty Agreement is absolute and not conditional, and should not be construed with the Loan Agreement. Appellant also contends that the lower court erred in permitting appellee to testify as to the terms and conditions of the Loan Agreement and the Loan Guaranty Agreement.
Parol evidence is admissible to connect several written instruments and show that they were all parts of one transaction; Jackson v. Parker, 1943, 153 Fla. 622, 15 So.2d 451; Asphalt Paving, Inc. v. Ulery, Fla.App. 1963, 149 So.2d 370; Halliburton Co. v. McPheron, 1962, 70 N.M. 403, 374 P.2d 286; 30 Am.Jur.2d, Evidence, § 1032; 13 Fla.Jur., Evidence, § 399.
Parol evidence is also admissible to show a condition precedent; Jackson v. Parker, supra; Bassato v. Denicola, Fla. 1955, 80 So.2d 353; Chappell v. Hasche, Fla.App. 1957, 98 So.2d 808; Burns v. Board of Public Instruction of Okaloosa Co., Fla.App. 1968, 212 So.2d 654; Beach Keys, Inc. v. Girvin, Fla. 1968, 213 So.2d 314; 32A C.J.S. Evidence § 935; 30 Am.Jur.2d, Evidence, § 1038; Corbin on Contracts, Volume 3, § 589; 7 Fla.Jur., Contracts, § 104.
Although the guaranty agreement was signed several days before the loan agreement, appellee testified that the final draft of the loan agreement was not prepared at that time. He stated that he signed the guaranty agreement with the understanding that the terms and conditions of the loan agreement would govern the guaranty agreement, and that Travelers were not to have any money until the loan agreement had been signed.
Not only appellee, but the president of the bank at the time of the negotiations, and others, testified that it was the intention of the parties that the terms of the guaranteeing agreement were to be subject to the terms of the written loan agreement.
The loan agreement specifically provided:
WHEREAS, subject to the terms and conditions of this Agreement, George V. Cortner is willing to indemnify The Northwestern Bank in the maximum amount of Sixty Thousand Five Hundred and No/100 Dollars ($60,500.00) upon loans to Travelers;
* * * * * *
4. It is further understood and agreed that at no time will the line of credit exceed fifty per cent (50%) of the current accounts receivable. Any account six (6) months old or older shall not be considered current. Traveler's will execute with the Bank a Notice of Accounts Receivable Financing to be placed on record at the Forsyth County Courthouse, and will stamp each accounts-receivable ledger card with the notation that each account has been pledged to The Northwestern Bank. Traveler's will provide each thirty (30) days a list of accounts receivable with copies of supporting invoices required to reconcile the receivables reported. This provision will become totally effective four (4) months, one hundred twenty (120) days after the execution of this Agreement to allow Traveler's to close out its receivable financing arrangement with the present factoring firm.
* * * * * *
9. Traveler's shall deliver to the Bank monthly financial statements, which shall include reports regarding the aging of accounts receivable and quarterly shall furnish to the Bank financial statements, which may be unaudited, prepared by Bruce Hall and Company of Winston-Salem, North Carolina.

*320 * * * * * *
11. As a further means of enabling the Bank to be fully cognizant of the financial condition of Traveler's, the undersigned corporations agree to maintain satisfactory banking accounts with the Northwestern Bank during the term of this agreement. This provision shall not preclude a complimentarily or token account with other financial institutions. Furthermore, Traveler's shall permit any accountant, attorney or other representative of the Bank at any reasonable time to inspect its records and accounts, and shall fully disclose any information requested bearing upon the financial condition of the business in which any of them shall be engaged.
We hold that the two written agreements should be construed together, even though they were not executed at the same time; Escambia Land & Mfg. Co. v. Ferry Pass Inspectors Ass'n, 1910, 59 Fla. 239, 52 So. 715; Spadaro v. Baird, 1929, 97 Fla. 50, 119 So. 788; McGhee Interests, Inc. v. Alexander Bank, 1931, 102 Fla. 140, 135 So. 545; Johnson v. Smith, Fla. 1956, 84 So.2d 722; Baker v. Maytag, Fla.App. 1968, 207 So.2d 300; Holcomb v. Bardill, Fla.App. 1968, 214 So.2d 522; 7 Fla.Jur., Contracts, § 78; 17 Am.Jur.2d, Contracts, § 264. See also Miami National Bank v. Fink, Fla.App. 1965, 174 So.2d 38, where the court considered the guaranty agreement and the collateral loan agreement together.
Construing the two agreements together, it is clear that appellee's guaranty was subject to the terms of the loan agreement, and thus it was a conditional guaranty. This does not change the express terms of the guaranty agreement, as to it being a continuing guaranty, or as to it not being a guaranty of collectability  the most common, but not the only kind of conditional guaranty. As stated in 38 C.J.S. Guaranty § 7, pp. 1140, 1141:
On the other hand, a conditional guaranty is one which is not enforceable immediately on the default of the principal debtor, but some contingency other than such default must happen, or the guarantee must take some steps, to fix the liability under the guaranty.[89] The most usual form of a conditional guaranty is that of collection or collectibility, that is, a guaranty that the claim guaranteed is collectable by due diligence, and if not so collectable, that the guarantor will pay.[90]... .
See cases collected under notes 89 and 90, especially Yama v. Sigman, 1945, 114 Colo. 323, 165 P.2d 191.
Appellee alleged in his affirmative defense that appellant failed to enforce the provisions of the loan agreement, and permitted the collateral required by the loan agreement to completely disappear. There was insufficient proof to show compliance with paragraph 4 of the loan agreement dealing with accounts receivable, or to show the amount of the accounts receivable which were lost. The burden was on appellant to show that all the conditions to the guarantor's liability had occurred or had been performed; 38 Am.Jur.2d, Guaranty, § 123 p. 1129; 38 C.J.S. Guaranty § 99.
Appellant has failed to prove that it complied with the conditions of the loan agreement by securing the debtor's accounts receivable which were to be the primary collateral for the loan. The guaranty agreement was therefore unenforceable against appellee; Miami National Bank v. Fink, supra.
We have reviewed the cases cited by appellant and find them to be distinguishable, in that the guaranty agreements involved were unconditional.
Appellant further contends that impairment of security is an affirmative defense *321 in mitigation of damages and does not constitute an absolute defense absent a showing of impairment of a sum equal to the obligation, citing 38 C.J.S. Guaranty § 81. The only case cited from the Florida courts under § 81 is Miami National Bank v. Fink, supra, which held that the guaranty agreement was unenforceable where the guarantee failed to secure the accounts receivable. In the case sub judice, appellant did not show the amount of accounts receivable which were lost. The record shows, however, that appellant did not take actual physical possession of the accounts receivable until the fall of 1968, approximately 3 years after the loan was made, and kept them for only a few months.
We think this case is controlled by Miami National Bank v. Fink, supra.
Appellant's third point on appeal is without merit.
The judgment appealed is, therefore,
Affirmed.
MANN, C.J., and McNULTY, J., concur.