560 So.2d 1337 (1990)
BARNETT BANKS TRUST COMPANY, N.A., a National Banking Association, As Trustee, Appellant,
v.
TITUSVILLE ASSOCIATES, LTD., a Florida Limited Partnership, by and through Michael J. LEVITT, Its General Partner; and Michael J. Levitt, Individually and As General Partner, Appellees.
No. 89-830.
District Court of Appeal of Florida, First District.
May 3, 1990.
Rehearing Denied July 6, 1990.
*1338 Christine Rieger Milton, of Mahoney, Adams, Milam, Surface & Grimsley, P.A., Jacksonville, for appellant.
Waddell A. Wallace, III, of Smith & Hulsey, Jacksonville, for appellees.
BARFIELD, Judge.
Barnett Banks Trust Company appeals from entry of a final declaratory judgment, asserting that the trial court erred in refusing to hear its motion for summary judgment, and that Barnett was entitled to a judgment as a matter of law. Alternatively, Barnett contends that competent, substantial evidence does not support the declaratory judgment. Because we reverse on the first two issues, we find it unnecessary to address the third issue.
In December, 1985 Brevard County issued industrial revenue development bonds in the amount of $7,250,000, for the purpose of lending funds to Titusville Associates, Ltd., ("Titusville" or "owner"), for the construction of an adult congregate living facility in Titusville. Brevard County sold the bonds to the Smith Barney, Harris Upham and Company, ("Smith Barney" or "underwriter"), who sold the bonds to the public and deposited the proceeds with Barnett. Pursuant to a financing agreement between Brevard County, Titusville and Barnett, the County loaned the bond proceeds to Titusville, and Titusville executed a promissory note, secured, in part, by a non-recourse mortgage in the project property and an assignment of rents and leases. Pursuant to a trust indenture agreement, the County assigned and pledged its right to collect and receive funds under the financing agreement to Barnett for the benefit of the bondholders.
Under paragraph 2.4 of the financing agreement, Titusville delivered to Barnett an operating deficit letter of credit in the amount of $511,000.[1] The letter of credit was originally set to expire on July 1, 1988, but the parties extended the expiration date to July 3, 1989. Additionally, Titusville's sole general partner, Michael J. Levitt, executed a two-part, personal "Guarantee of Completion." In the first part, which is not at issue in this case, Levitt guaranteed substantial completion of the *1339 project in accordance with the plans and specifications of the loan agreement. In the second part, Levitt guaranteed payment of operating deficits in the following manner:
4. Guarantor further agrees to cause Borrower to pay all Project operating deficits, as determined by Borrower's certified accountants, for a period of three (3) years beginning after the receipt of a certificate of occupancy for the first Project Unit. This guarantee of operating deficits shall not require Guarantor (or Borrower) to advance more than $750,000 under this Guarantee, exclusive of any amounts that may be available for operating deficits from Bond Proceeds.
In August, 1987, Titusville defaulted on the loan. Pursuant to the trust indenture agreement, Barnett accelerated and declared due and payable all indebtedness under the loan agreement. A dispute immediately arose as to whether Barnett could collect the full amount of Levitt's $750,000 guarantee and draw on the $511,000 letter of credit. In January, 1988, Barnett filed a complaint for a declaratory judgment against Titusville and Levitt, alleging that the guarantee and letter of credit were separate and independent sources of security for the bondholders and, that upon default, the trustee could draw the full amount of the letter of credit. The trustee amended the complaint in March, 1988.
In its answer to the amended complaint, Titusville and Levitt asserted that the letter of credit and the personal guarantee did not constitute separate obligations; that all parties knew and intended that the letter of credit was security for the guarantee; and, that Barnett was entitled to recover no more than $750,000, regardless of whether those funds were advanced directly by Levitt or were obtained by drawing on the letter of credit. Titusville and Levitt counterclaimed for a declaratory judgment, alleging that Levitt had already advanced $750,000 from his own funds to cover operating deficits; and, that any draw on the letter of credit by the trustee would wrongfully cause Titusville to advance more than the $750,000 limitation set forth in the guarantee. As supplemental relief, Titusville demanded that Barnett return the letter of credit for cancellation.
A bench trial was set for August 29, 1988. On August 9, 1988, Barnett filed and served a motion for summary judgment. On August 19, 1988, Barnett served a notice of hearing of the motion, setting the hearing for the morning of trial. Immediately prior to trial, Titusville objected to the hearing, arguing that Barnett had failed to serve the notice twenty days prior to the date set for the hearing, as required under Florida Rule of Civil Procedure 1.510(c). The trial court sustained the objection, stating that rule 1.510(c) contemplates that the notice be served simultaneously with the motion. The court relied upon Wakefield Nursery v. Hunter, 443 So.2d 465 (Fla. 4th DCA 1984), which reversed a summary final judgment "because only eight days transpired between the date of the Notice and the date of the hearing whereas the rules clearly require 20 days notice."
Based on two full days of testimony and presentation of documentary evidence by both parties, the trial court entered a final declaratory judgment, concluding that "the greater weight of the evidence d[id] not support Barnett's claims and that instead the greater weight of the evidence support[ed] the counterclaim of defendants, Titusville and Levitt." The court found that the letter of credit did not constitute an obligation separate and apart from the operating deficit guarantee, but instead only constituted security for that guarantee. The court further found that Barnett was entitled to recover no more than $750,000 from Titusville and Levitt for use in paying operating deficits, including debt service on the loan to the owner, regardless of whether such funds were advanced directly by the defendants or obtained by the trustee through draws on the letter of credit. The *1340 court concluded that any such draws would count against and act to satisfy or discharge Levitt's obligation under the guarantee.
We first conclude that the trial court erred in refusing to consider Barnett's motion for summary judgment. In relevant part, rule 1.510(c) states that "[t]he motion [for summary judgment] shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall be served at least twenty days before the time fixed for the hearing." The twenty-day requirement does not govern service of a notice of hearing. Trawick, Fla.Prac. and Proc., § 25-6 (1988 ed). Rather, rule 1.090(d) requires that a proper notice of hearing be served a reasonable time before the time specified for the hearing. Id.
Barnett filed the motion twenty days before the hearing and served the notice ten days before the hearing. Titusville/Levitt only argued against hearing the motion because the notice of hearing did not comply with the rule; they did not contend that they did not have sufficient time to prepare for the hearing. Under these circumstances, we conclude that the notice of hearing served ten days before the date specified for the hearing was timely under rule 1.090(d).
In reversing the summary final judgment in Wakefield Nursery v. Hunter, the Fourth District Court of Appeal cited Greer v. Workman, 203 So.2d 665 (Fla. 4th DCA 1967). However, Greer reversed a summary judgment based upon a non-noticed, unserved motion. In Wakefield, it is unclear whether the motion for summary judgment was timely filed within the twenty-day period. We distinguish Wakefield on that basis. We also conclude that the Wakefield court erroneously interpreted rule 1.510(c).
We also reject Titusville/Levitt's reliance upon John K. Brennan Co. v. Central Band & Trust Co., 164 So.2d 525 (Fla. 2d DCA 1964), and Fernandez v. Moreno, 176 So.2d 587 (Fla. 3d DCA 1965). Both cases address former rule 1.36(b), which provided that "[t]he motion shall be served at least 10 days before the time fixed for the hearing." In John K. Brennan, the circuit court, sua sponte, entered a summary decree for the nonmoving party, and the Second DCA reversed, holding that (former) rule 1.36 required an opportunity to be heard on ten days written notice of the application for summary judgment. In Fernandez, the circuit court erroneously granted a motion for summary judgment, when the motion, although filed for several months, had not been served in accordance with (former) rule 1.36. While both John K. Brennan and Fernandez require that the motion be served within the prescribed time period, neither case addressed the time requirement for service of a notice of hearing.
Titusville and Levitt contend on appeal that any error in refusing to consider the motion for summary judgment was harmless. We disagree with this contention. In clear and unambiguous terms, paragraph 2.4 of the financing agreement required Titusville to deliver the operating deficit letter of credit to Barnett. The letter of credit itself did not refer to any other document. In fact, the letter provided that it "SETS FORTH IN FULL THE TERMS OF [THE] UNDERTAKING AND [THAT] SUCH UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED OR AMPLIFIED BY REFERENCE TO ANY DOCUMENTS, INSTRUMENT, OR AGREEMENT... ." As a matter of law, the letter of credit was entirely independent of and unrelated to the underlying transaction between Brevard County, Titusville and Barnett. See Fidelity Nat'l Bank of South Miami v. Dade County, 371 So.2d 545 (Fla. 3d DCA 1979). Barnett could have presented the letter to the issuing bank and received payment without any determination of whether Levitt had already fullfilled his obligations under the personal guarantee.
The operating deficit guarantee is a personal, and not a partnership, obligation. The guarantee does not refer to the letter of credit; nor does it specify a set-off by the letter of credit. In fact, paragraph seven of the guarantee states that the guarantee represents the entire agreement between Brevard County and Levitt, and that no modification of the document is effective unless in writing and signed by the parties. Under these circumstances, parol evidence was inadmissible to modify, vary or contradict the unambiguous and unqualified terms of the guarantee. If Titusville and Levitt intended to reduce their financial exposure on operating deficits, they should have included set-off or reduction language in the guarantee. See E.A. Turner Constr. Co. v. Demetree Builders, Inc., 141 So.2d 312 (Fla. 1st DCA 1962).
*1341 Titusville/Levitt's reliance upon J.M. Montgomery Roofing Co. v. Howland, 98 So.2d 484 (Fla. 1957) is misplaced. In Montgomery the plaintiff, a subcontractor, sued a general contractor to recover the balance due under their contract. The contract allowed the general contractor to claim a credit if the plaintiff omitted or failed to furnish any material or work. Another subcontractor completed certain work, and the general contractor claimed the credit. In its motion for summary judgment, the plaintiff presented evidence showing that the other subcontractor's contract, and not its own contract, contemplated the work at issue. The trial court refused to consider the parol evidence and granted the general contractor's motion for summary judgment. The Florida Supreme Court reversed, holding that, while the plaintiff's contract was unambiguous, the fact that the same official for the general contractor simultaneously executed the other subcontract, which covered a portion of the exact work called for by the plaintiff's contract, rendered the terms of the plaintiff's contract ambiguous and justified the consideration of parol evidence to clarify the true intention of the parties. 98 So.2d at 486.
The instant case is distinguishable. Unlike the subcontracts in Montgomery, the letter of credit and the personal guarantee, while both addressing payment of the same operating deficit expenses, are not contracts of the same dignity. The letter of credit constitutes a contribution by the partnership toward the equity of the project. The guarantee is a personal obligation, providing the bondholders with security in the event that the partnership was unable to meet the project's operating deficit expenses. The terms of neither document renders the other ambiguous, and both are consistent with the overall loan transaction.
We also reject Titusville/Levitt's reliance upon Saco Dev., Inc. v. Joseph Bucheck Constr. Corp., 373 So.2d 419 (Fla. 1st DCA 1979), Warner v. Caldwell, 354 So.2d 91 (Fla. 3d DCA 1977), cert. den., 361 So.2d 836 (Fla. 1978), and Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973). In Saco Dev., the trial court erroneously entered a summary judgment, where an indemnity/hold harmless agreement and a release agreement, all part of the same transaction, were mutually repugnant and inconsistent, justifying consideration of parol evidence to clarify the inconsistencies. In Warner v. Caldwell, the trial court did not err in allowing a group of guarantors to refer to a breach of a loan agreement as a defense to liability under the guarantee, where the guarantee itself specifically referred to the loan agreement. In Cortner, parol evidence was admissible to show that a condition precedent to a loan guarantee agreement existed. None of the above situations apply to the instant case.
In summary, we REVERSE the final declaratory judgment. Rather than hearing Barnett's motion for summary judgment and granting the motion, the trial court improperly considered parol evidence in determining the parties' rights under the financing agreement, letter of credit and personal guarantee, which were clear and unambiguous by their respective terms. Consequently, we REVERSE the final declaratory judgment and REMAND for proceedings consistent with this opinion.
ERVIN and JOANOS, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
DENIED.
JOANOS and BARFIELD, JJ., concur. ERVIN, J., specially concurring with written opinion.
ERVIN, J., specially concurring.
Contrary to appellees' assertion on rehearing, I find no conflict between this court's opinion and Wakefield Nursery v. Hunter, 443 So.2d 465 (Fla. 4th DCA 1984). It was this court's decision that Wakefield is factually distinguishable, because it is unclear in that case whether the motion for summary judgment was timely filed.
As to the parol evidence issue, I certainly have no problem with the rule of law "[t]hat parol evidence is admissible to connect several written instruments and show that they were all parts of one transaction." Burgan v. Pines Co. of Ga., Ltd., 382 So.2d 1295, 1296 (Fla. 1st DCA 1980). See also Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2d DCA 1973). Clearly the letter of credit and the operating deficit guaranty were part of the same transaction. This court properly construed those documents together, and in so doing, found that neither instrument renders the other ambiguous, and that both are consistent with the overall loan transaction. Under those circumstances, it was error for the trial court to consider additional parol evidence when it construed those instruments.
NOTES
[1] Although paragraph 2.4 states an amount of $400,000, it is undisputed that the $400,000 figure represents either a typographical error or an oversight. Through pre-closing negotiations, the parties increased the amount of the letter of credit to $511,000.