PER CURIAM.
We have for review Barnett Banks Trust Co,, N.A. v. Titusville Associates, Ltd,., 560 So.2d 1337 (Fla. 1st DCA 1990), based on express and direct conflict with Wakefield Nursery v. Hunter, 443 So.2d 465 (Fla. 4th DCA 1984). We have jurisdiction. Art. V, § 3(b)(3),. Fla. Const.
In 1985, Brevard County issued industrial revenue development bonds to finance an adult congregate living facility to be built by Titusville Associates. Under their financing agreement, the county loaned the funds to Titusville Associates, and the latter signed a promissory note secured in part by a nonrecourse mortgage in the facility and an assignment of rents and leases. The county also entered into a trust indenture agreement whereby it pledged to Barnett Banks its right to collect and receive funds under the financing agreement, for the benefit of the bondholders.
The financing agreement required Titus-ville Associates to deliver to Barnett Banks an operating deficit letter of credit for $511,000, which originally was set to expire on July 1,1988, but was extended to July 3, 1989. In addition, Titusville Associates’ only general partner, Michael J. Levitt, signed a personal guarantee that in pertinent part required him to cover operating deficits not to exceed $750,000. The letter of credit and guarantee are embodied in separate documents, and each contains its own integration clause specifying that the document embodies the entire agreement between the parties and cannot otherwise be modified.
The guarantee did not refer to the letter of credit and did not specify that Levitt’s *610 personal $750,000 exposure would be reduced by any amount Barnett Banks might obtain under the $511,000 letter of credit issued on behalf of the partnership. The personal guarantee stated in pertinent part only that the guarantee “shall not require Guarantor (or Borrower) to advance more than $750,000 under this Guarantee, exclusive of any amounts that may be available for operating deficits from Bond Proceeds.”
In 1987, Titusville Associates defaulted on its loan, and Barnett Banks exercised its option to accelerate the payments due. In early 1988, Barnett Banks then filed a complaint for declaratory judgment that attempted to collect Levitt’s personal $750,-000 guarantee and simultaneously draw on the partnership’s $511,000 letter of credit. Barnett Banks argued that the guarantee and letter of credit were separate sources of security for the bondholders, while Ti-tusville Associates and Levitt contended that the terms of the guarantee limited Barnett to a total recovery of no more than $750,000 including the amount from the letter of credit.
On August 8, 1988, Barnett filed and served a motion for summary judgment in the suit. On August 19, 1988, Barnett served a notice of hearing on the motion, to be held the morning of trial on August 29, 1988. The trial court held that the notice was not timely under Wakefield Nursery, because it had not been served at least twenty days prior to the hearing. See Fla. R.Civ.P. 1.510(c). After a brief nonjury trial, the trial court entered a declaratory judgment in favor of Titusville Associates. Based partly on parol evidence, the trial court concluded that the letter of credit and guarantee were part of the same transaction and that the $750,000 limitation on Barnett Banks’s recovery applied to both.
The district court of appeal reversed. First, it found that the notice of the summary judgment hearing was timely because the twenty-day requirement of Florida Rule of Civil Procedure 1.510(c) “does not govern service of a notice of hearing,” and that the notice therefore need only be given “a reasonable time” in advance. Barnett Banks, 560 So.2d at 1340. Second, the court found that the terms of the letter of credit and personal guarantee were unambiguous and that the trial court improperly relied on parol evidence. The court concluded:
[T]he letter of credit and the personal guarantee, while both addressing payment of'the same operating deficit expenses, are not contracts of the same dignity. The letter of credit constitutes a contribution by the partnership toward the equity of the project. The guarantee is a personal obligation, providing the bondholders with security in the event that the partnership was unable to meet the project’s operating deficit expenses. The terms of neither document renders the other ambiguous, and both are consistent with the overall loan transaction.
Id. at 1341. Therefore, the district court of appeal held that the summary judgment motion should have been granted. Id. at 1340-41.
The first issue in this case depends upon an interpretation of rule 1.510(c). This rule, which pertains to motions for summary judgment, reads in pertinent part:
(c) Motion and Proceedings Thereon. The motion shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall be served at least twenty days before the time fixed for the hearing. The adverse party may serve opposing affidavits prior to the day of hearing.
The rule is not ambiguous. Contrary to the opinion in Wakefield Nursery, we believe that the twenty-day requirement applies only to the motion, not the notice of hearing. Henry P. Trawick, Florida Practice and Procedure § 25-6 (1988). Because the notice of hearing was served ten days before the hearing, there was no question that Titusville Associates received timely notice. Had Titusville Associates required further time to oppose the motion, it could have sought a continuance pursuant to Florida Rule of Civil Procedure 1.510(f).
We recognize that many lawyers may have assumed that rule 1.510(c) required *611 twenty days’ notice of the hearing because, in practice, the motion and the notice are often filed at the same time. Therefore, we request the Civil Procedure Rules Committee of the Florida Bar to review the rule and make recommendations with respect to whether any changes should be made. However, we express no opinion on the desirability of the rule as currently drafted.
On the second issue, we agree with the court below that the terms of the letter of credit and personal guarantee were unambiguous and not subject to modification by parol evidence. This conclusion is strongly supported by the fact that both instruments contained their own integration clauses, and that the personal guarantee nowhere referred to the letter of credit or a possible offset based on the $511,000 amount of the partnership’s letter of credit. Had the parties intended the $750,000 limitation to include the amount from the letter of credit, they should have done so in express language, especially in light of the integration clauses contained in these documents. Each of the relevant documents clearly can stand alone and be fully enforced without affecting the meaning of the other, nor is there any ambiguity in the way they are drafted. Accordingly, we find no error in the determination of the merits of this case.
We disapprove Wakefield Nursery to the extent it conflicts with this opinion. We approve the opinion below.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.